Commonwealth *v.* Anskate, Appellant.

Argued November 8, 1971. Before WRIGHT, P. J., WATKINS, MONTGOMERY, JACOBS, HOFFMAN, and CERCONE, JJ. (SPAULDING, J., absent).

*Richard E. Davis,* Assistant Public Defender, for appellant.

*James C. Tosh,* Assistant District Attorney, with him *Robert C. Reed,* District Attorney, for Commonwealth, appellee.

OPINION BY WATKINS, J., March 24, 1972:

This is an appeal from the judgment of sentence of the Court of Common Pleas, Criminal Division, by the defendant, George Anskate; and from the denial of his post-trial motion for a new trial.

The only question before the Court on appeal is whether the defendant is entitled to a new trial be-

cause of alleged prejudicial remarks by the court which prevented a fair trial. The trial was held on March 15, 1971, before the Honorable Frank E. REED, P. J., Orphans' Court Division, specially presiding, and a Jury.

During the course of the Commonwealth case, the victim identified Bill Anskate and Tom Pickens as having been with the accused when she first met him. She also indicated that she and George Anskate went into a cabin and had sexual intercourse. She also testified that Bill Anskate, Tom Abbott, Tom Pickens, herself, the defendant and others went for a ride. Throughout the testimony, she had the boys coming back to the cabin and had them appearing and reappearing in the area. She also testified that some of the boys were present during intercourse.

Tom Abbott, Tom Pickens, Bill Anskate were among those listed by the defendant on his "Notice of Alibi Defense", as alibi witnesses. After the testimony by the victim concerning the boys above mentioned and before the conclusion of the Commonwealth case, the court said:

"THE COURT: What you are dealing with—there should be charges brought against all these boys of corrupting the morals of minors, contributing to the delinquency of minors.

"MR. ALBAUGH: If the jury finds them guilty.

"THE COURT: Yes.

"MR. ALBAUGH: Now, I asked to move at this time for the withdrawal of the jury.

"THE COURT: The objection is denied. An exception is noted. I get sick and tired sitting here day after day when the district attorneys will not object. He will not object to anything."

It must be determined from all the circumstances whether a remark has a prejudicial effect; there is no

fixed rule applicable to every case. An accepted guide in determining prejudicial effect is that, if the remark may be said with fair assurance to have had but a slight effect upon the jury, if any at all, and one is not left in doubt that it had no substantial influence in the case, it will not vitiate an otherwise fair trial. *Commonwealth v. Blose*, 160 Pa. Superior Ct. 165, 50 A. 2d 742 (1947).

In *Commonwealth v. Savor*, 180 Pa. Superior Ct. 469, 119 A. 2d 849 (1956), this Court said at pp. 473-74: "The best approach to a rule was enunciated in Commonwealth v. Blose, 160 Pa. Superior Ct. 165, 50 A. 2d 742, where we adopted the following language of Mr. Justice RUTLEDGE in Kotteakos v. United States, 328 U.S. 750, 66 S. Ct. 1239: 'If, when all is said and done, the conviction is sure that the error did not influence the jury, or had but very slight effect, the verdict and the judgment should stand . . . But if one cannot say, with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error, it is impossible to conclude that substantial rights were not affected. The inquiry cannot be merely whether there was enough to support the result, apart from the phase affected by the error. It is rather, even so, whether the error itself had substantial influence. If so, or if one is left in grave doubt, the conviction cannot stand'."

It seems clear, in this case, that the remarks by the court were clearly prejudicial to the defendant's case and prevented a fair and impartial trial. This was a case of statutory rape wherein the credibility of the alleged victim and the credibility of the defendant are very much in issue. The defense was alibi and the court's remarks clearly destroyed the credibility of the alibi witnesses. By his statement, the court was plac-

ing a stamp of approval on the credibility of the victim and against the defendant before the defendant had the opportunity of putting in his defense.

In *Commonwealth v. Claiborne*, 175 Pa. Superior Ct. 42, 102 A. 2d 900 (1953), this Court said at pp. 50-51: "The Judge occupies an exalted and dignified position; he is the one person to whom the jury, with rare exceptions, looks for guidance, and from whom the litigants expect absolute impartiality. An expression indicative of favor or condemnation is quickly reflected in the jury box and at the counsel table. To depart from the clear line of duty through question, expression or conduct, contravenes the orderly administration of justice. It has a tendency to take from one of the parties the right to a fair and impartial trial, as guaranteed under our system of jurisprudence. Judges should refrain from extended examination of witnesses; they should not, during the trial, indicate an opinion on the merits, a doubt as to the witnesses's credibility, or do anything to indicate a leaning to one side or the other, without explaining to the jury that all these matters are for them." See also, *Commonwealth v. Hales*, 384 Pa. 153, 119 A. 2d 520 (1956); *Commonwealth v. Stallone*, 281 Pa. 41, 126 A. 56 (1924).

The defendant has a right to a trial by a fair and impartial jury whose consideration of the case is not influenced by any language or conduct by the trial judge which creates resentment or prejudice against the defendant.

The judgment of sentence is reversed and a new trial granted.

WRIGHT, P. J., would affirm on the opinion of President Judge REED.