572 A.2d 1232

**COMMONWEALTH of Pennsylvania, Appellee,**

**v.**

**Abdul RASHEED, Appellant.**

Superior Court of Pennsylvania.

Argued Oct. 23, 1989.

Filed March 27, 1990.

Leonard N. Sosnov, Philadelphia, for appellant.

Frances G. Gerson, Asst. Dist. Atty., Philadelphia, for Com., appellee.

Before CIRILLO, President Judge, and CAVANAUGH, BROSKY, OLSZEWSKI, DEL SOLE, MONTEMURO, TAMILIA, KELLY and JOHNSON, JJ.

CAVANAUGH, Judge:

The sole issue for our consideration is whether the trial court committed reversible error in charging the jury in a rape case, over objection by defense counsel, that the defendant did not have to testify and that no unfavorable inference was to be drawn against the defendant for failure to testify in his own behalf.[1]

In the case before us, the appellant, Abdul Rasheed, did not take the witness stand in the trial in which he was charged with rape and possession of an instrument of crime. His counsel did not want the court to charge on his client's right not to incriminate himself, as he feared such instruction would focus the jury's attention on the fact that the appellant did not testify.[2]

An accused in a criminal trial has the right not to testify under the Fifth Amendment of the United States Constitution as applied to the states through the Fourteenth Amend-

---

1. The relevant portion of the charge by Honorable Charles Klein, senior judge, was as follows:

    Now, the defendant, Abdul Rasheed, did not take the witness stand in his own defense. Under the law, he does not have to take the stand or offer a defense. This is his absolute right and must be clearly understood by you and accepted as his right. Defendant is presumed to be innocent, and the burden remains on the Commonwealth to prove beyond a reasonable doubt all of the elements of the crimes with which the defendant is charged from the beginning of the trial till the end thereof.

    Therefore, I wish to make it clear that no inference, and certainly, no unfavorable inference is to be drawn against the defendant because he did not take the stand in his own behalf.

2. Following trial, the jury convicted appellant of rape and possession of an instrument of crime and he was sentenced to imprisonment for rape for a period of seven and one-half to fifteen years. The court did not impose sentence for his conviction of possession of an instrument of crime.

ment.  *Griffin v. California*, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965).  In Pennsylvania, a criminal defendant is also protected against testifying against himself by statute,[3] and by the provisions of Article I, Section 9 of the Pennsylvania Constitution.[4]

In the instant case, the defendant did not testify, and the prosecution made no reference to his failure to do so. Notwithstanding defense counsel's request that he not, the court gave an instruction that is generally considered to be beneficial to the defendant that the jury could not draw any adverse inference against the appellant from his failure to testify.  Trial counsel, as part of the strategy employed, requested the court not to give the instruction and the request was not complied with.  Therein lies the basis of this appeal.

In *Commonwealth v. Danzy*, 225 Pa.Super. 234, 310 A.2d 291 (1973), the defendant did not request that the court not charge on his right to remain silent and the court charged that he had such a right, and that failure to testify could not be used against the defendant.  The appellant contended that it was error to give such a charge in the absence of a request that it be given.  We held that the charge could

**3.** 42 Pa.C.S. § 5941(a) provides:

(a) **General rule.**—Except defendants actually upon trial in a criminal proceeding, any competent witness may be compelled to testify in any matter, civil or criminal; but he may not be compelled to answer any question which, in the opinion of the trial judge, would tend to incriminate him; nor may the neglect or refusal of any defendant, actually upon trial in a criminal proceeding, to offer himself as a witness, be treated as creating any presumption against him, or be adversely referred to by court or counsel during the trial.

**4.** Article I, Section 9 of the Pennsylvania Constitution provides:

**Sec. 9.  Rights of accused in criminal prosecutions.**

In all criminal prosecutions the accused hath a right to be heard by himself and his counsel, to demand the nature and cause of the accusation against him, to meet the witnesses face to face, to have compulsory process for obtaining witnesses in his favor, and, in prosecutions by indictment or information, a speedy public trial by an impartial jury of the vicinage; *he cannot be compelled to give evidence against himself*, nor can he be deprived of his life, liberty, or property, unless by the judgment of his peers or the law of the land.  (Emphasis added.)

properly be given "so long as the defendant does not object." 225 Pa.Super. 291, 310 A.2d 293. The court also noted that the charge is given for the protection of the defendant.

The Commonwealth, as appellee, argues that under *Lakeside v. Oregon*, 435 U.S. 333, 98 S.Ct. 1091, 55 L.Ed.2d 319 (1978) the charge may be properly given even where the defendant objects. *Lakeside, supra,* held that where the defendant objects to the charge, and the charge is given nevertheless, this does not violate the Fifth and Fourteenth Amendments to the United States Constitution. The court noted, however, at 435 U.S. 340–341, 98 S.Ct. at 1095–1096, 55 L.Ed.2d 326:

> It may be wise for a trial judge not to give such a cautionary instruction over a defendant's objection. *And each State is, of course, free to forbid its trial judges from doing so as a matter of state law.* We hold only that the giving of such an instruction over the defendant's objection does not violate the privilege against compulsory self-incrimination guaranteed by the Fifth and Fourteenth Amendments. (Emphasis added.)

All that *Lakeside, supra,* did was to remove federal constitutional barriers to the giving of the charge in question over counsel's objection; it did not give approval to such a charge when objected to, and expressly left it to the states to decide the question.

Our decision in *Danzy, supra,* while not directly on point, since the procedural posture was different than in our case, by implication, stated that if the defendant objects to the charge before it is given, the court should not give the charge. This rule is reasonable, as defense counsel and his or her client should be able to decide if they want the jury to focus on the fact that the defendant has not testified. The jury will be aware of this fact, but in some cases the defendant may not want this highlighted.

■ We believe the rule should be that where a criminal defendant does not testify, and specifically requests the

court not to charge that he has the right not to testify and that no adverse inference may be drawn from his failure to take the stand, that it is error for the court to give the instruction concerning a defendant's right to remain silent.[5] This is consistent with *Commonwealth v. Danzy, supra,* which stated that "[W]hether the charge is given is the defendant's choice." 225 Pa.Super. 236, 310 A.2d 293.

■ While it was error to give the instruction where the defendant requested that it not be given, we must look at the entire record of the trial at which the error occurred to determine if it is harmless error. In the case before us, there was evidence that the appellant knew Deborah King for a short period of time prior to the incident. Ms. King worked in the Custodian Department at Central High School and when walking to work, she passed the defendant, who at that time was employed as a construction worker, and came to know him. Ms. King lived alone. At 9:30 A.M. on the morning of June 16, 1986, the appellant appeared at her door to return a jug that she had loaned him containing a beverage. She invited him in and gave him a can of beer. The two talked in the kitchen. Finally, Ms. King told the appellant that he would have to leave, as she had to return to work. The appellant made advances toward Ms. King and when she refused to kiss him and again told him to leave, he pulled out a twelve-inch knife and instructed her to go to the bedroom. She was fearful not to comply with his demands and he told her to remove

5. This rule does not necessarily extend to cases where the prosecutor erroneously refers to the fact that the defendant did not testify. A cautionary instruction may be required then to cure the error. The Subcommittee Note for Pennsylvania Suggested Standard Criminal Jury Instruction 3.10A states:

The question of whether to give this type instruction [concerning right to remain silent] generally does not come up unless the prosecutor or someone else has improperly alluded to the defendant's silence. The instruction may be given *sua sponte,* and preferably immediately, whenever a flagrant impropriety occurs. However, because the instruction does remind the jury that the defendant did not elect to tell his own story, the court should ordinarily ascertain the defense counsel's desires before giving the instruction. A defense preference for no instruction ought to be respected when the impropriety was not serious.

her clothing which she did. She kept asking him why he was doing this to her. She told him that she was bleeding and he said that he had seen blood before. He then had sexual intercourse with her and after he reached for his knife again, the victim submitted to a second act of intercourse. After the acts occurred, the two got dressed and the appellant walked the victim to school.

When Ms. King got to her work area at Central High School, one of her co-workers saw that she was crying and asked her what was wrong and she told her that she had been raped. She also told a non-teaching assistant what happened, who told her to report the incident to the police, which she did. She was then taken to Episcopal Hospital and examined.

A few days after the assault occurred, the appellant called Ms. King and asked her if she called the police on him.

While the court erred in giving the objected to charge, the error was not such that a new trial is required. Where an error is committed in introducing evidence, it may be harmless error in some circumstances. The supreme court stated in *Commonwealth v. Story*, 476 Pa. 391, 412, 383 A.2d 155, 166 (1978):

> ... [E]rror may be harmless where the properly admitted evidence of guilt is so overwhelming and the prejudicial effect of the error is so insignificant by comparison that it is clear beyond a reasonable doubt that the error could not have contributed to the verdict.

In determining whether error in admitting evidence is harmless, the court must determine if the admissible evidence of guilt is overwhelming. *Commonwealth v. Morris*, 522 Pa. 533, 564 A.2d 1226 (1989); *Commonwealth v. Floyd*, 506 Pa. 85, 484 A.2d 365 (1984); *Commonwealth v. Mehmeti*, 501 Pa. 589, 462 A.2d 657 (1983). The reviewing court therefore focuses on whether the error contributed to the verdict, and if so, it is not harmless. By way of analogy, prosecutorial misconduct is grounds for relief only where the conduct prejudices the jury by forming in its

mind fixed bias and hostility toward the defendant so that it could not weigh the evidence objectively and render a true verdict. *Commonwealth v. Anderson,* 501 Pa. 275, 461 A.2d 208 (1983). Further, the prejudicial effect must be evaluated in the context in which it occurred. *Commonwealth v. D'Amato,* 514 Pa. 471, 526 A.2d 300 (1987).

Our case does not involve evidence erroneously admitted, or conduct by a prosecutor that is improper and therefore, admitted an element of error into a trial, but rather a charge by the court that it was a correct statement of the law, but should not have been given.[6] To determine if the error is harmless, we must discern if the error in the charge, in any way, contributed to the verdict so as to render it less than a true verdict. We perceive that it did not in this case. The appellant has not challenged the sufficiency of the evidence, and indeed it was sufficient under the law to sustain the convictions. Although the charge may have called attention to the fact that the appellant did not testify, no evidence was offered on behalf of the defendant and the charge did not call the jury's attention to anything of which it was not aware.[7]

6. The Concurring and Dissenting Opinion focuses on whether the evidence of guilt is overwhelming to determine if the evidence is harmless. However, as noted above, the error in the instant case did not involve an error in admitting evidence, as in *Story, supra.* The focal point in the matter *sub judice,* is whether the charge as given resulted in an improper verdict.

7. Our case is distinguishable from *Lakeside v. Oregon,* where several witnesses testified on behalf of the defendant, but the thoughts expressed by the court are nevertheless applicable. The court stated at 435 U.S. 339–340, 98 S.Ct. at 1094, 1095, 55 L.Ed.2d at 325:

Specifically, the petitioner contends that in a trial such as this one, where the defense was presented through several witnesses, the defendant can reasonably hope that the jury will not notice that he himself did not testify. In such circumstances, the giving of the cautionary instruction, he says, is like "waving a red flag in front of the jury.

The petitioner's argument would require indulgence in two very doubtful assumptions. First, that the jurors have not noticed that the defendant did not testify and will not, therefore, draw adverse inferences on their own. Second, that the jurors will totally disregard the instruction, and affirmatively give weight to what they have been told not to consider at all.

■ While we decide that the court erred in charging the jury concerning the lack of an adverse inference from the defendant's failure to testify, when the defendant requested that such charge not be given, we are unable to agree with the Supreme Court of Massachusetts that the giving of the charge is *per se* reversible error.[8] The better course, in our opinion, is to determine on a case by case basis whether the error committed by the court in giving the charge when the defendant requested that it not be given, constitutes harmless error, as in the case before us.

■ We add the following in response to the dissenting opinion of Cirillo, President Judge: We do not find that the issue raised by appellant has been waived. The Commonwealth in its brief concedes that the appellant filed supplemental post-verdict motions raising the sole issue pursued on this appeal. Further, in our view, Judge Klein permitted the filing of the supplemental post-verdict motions when he stated that "additional grounds raised in support of such motions may be filed in writing after the transcription of the record if the transcript is necessary for these additional grounds." In any event, the supplemental motion was filed eleven days after the verdict, and in view of the trial court's statement, must be construed to be timely.

**8.** The Supreme Judicial Court of Massachusetts stated in *Commonwealth v. Buiel,* 391 Mass. 744, 463 N.E.2d 1172 (1984) held that it is reversible error to grant the instruction where the defendant requested that it not be given, but that the rule would not be applied to the instant case, but would apply in the future. The court stated at 391 Mass. 746, 463 N.E.2d 1173–1174:

We have no hesitancy in announcing for the future that it will be reversible error if a judge instructs the jury concerning a defendant's right not to testify when the defendant has requested that no such instruction be given. It is difficult to determine whether such an instruction is beneficial to a particular defendant or to defendants as a group. On the one hand, it warns the jury against drawing inferences adverse to the defendant from his not testifying. On the other hand, such an instruction may focus the jury's attention on the question why the defendant decided not to assist the jury in their fact-finding function.

See also, *Hardaway v. State of Maryland,* 317 Md. 160, 562 A.2d 1234 (1989) which refers to several states in which giving the instruction in question in our case, over the defendant's objection, has been held to be error.

We must not be too quick to find waiver. In *Commonwealth v. Sheaff*, 365 Pa.Super. 613, 530 A.2d 480 (1987) this court held that it could not consider a sufficiency of the evidence issue raised in a supplemental post-trial motion where the court did not grant permission to file such a motion, even though the trial court considered this issue on the merits. The Supreme Court in a *per curiam* order held that this court erred in treating the issue as waived. 518 Pa. 55, 544 A.2d 1342 (1988).

In *Kurtas v. Kurtas*, 521 Pa. 105, 555 A.2d 804 (1989) the Supreme Court determined that this court abused its discretion in finding waiver of an issue where the post-trial motions were not filed within ten days after verdict in violation of the rules of civil procedure, where the trial court overlooked the defect, and addressed the merits of the issue. *See also, Commonwealth v. Hewett*, 380 Pa.Super. 334, 551 A.2d 1080 (1988) where we deemed an issue not waived although there was no permission granted to file supplemental post-trial motions, and the trial court nevertheless considered the issue. We were guided by the Supreme Court's per curiam order in *Commonwealth v. Sheaff, supra.*

In the instant case, the court below abused its discretion in not reviewing the issue raised in the supplemental post-trial motion. In any event, even if we considered that the issue was waived, which we do not, we could nevertheless choose to consider the issue. *Commonwealth v. McSherry*, 371 Pa.Super. 164, 537 A.2d 871 (1988). Finally, it is significant that the issue in this case was considered of sufficient importance to be heard by the court *en banc*.

Judgment of sentence affirmed.

TAMILIA, J., files concurring statement.

KELLY and JOHNSON, JJ., file concurring and dissenting opinions.

CIRILLO, President Judge, files dissenting opinion.

TAMILIA, Judge, concurring:

I vote to join Cavanaugh, J., and remark only that despite trial counsel's presumed strategy to avoid having the jury "reminded" that appellant did not testify, my experience in talking to jurors and lay people in general leads me to believe there is a common impression that a person who does not testify in his own defense is concealing something or is guilty. The charge which instructs the jury to remove from their minds any belief that a party is guilty because of failure to testify deals with this almost universal perception. The harm which it attempts to obviate far exceeds the occasional strategic benefit counsel might believe is achieved by failure to enunciate the principle to the jury. Failing to give the charge also sets up an argument for ineffective counsel when review by other counsel, with a different viewpoint, leads to the conclusion that the charge should have been given. This is a matter in which we cannot second guess the trial judge.

KELLY, Judge, concurring and dissenting:

I concur in the result only. I find neither error nor prejudice in the trial court's decision to correctly instruct the jury, over defense counsel's objections, as to the jury's obligation not to draw a negative inference from the defendant's exercise of his right not to testify.

Defense counsel, and apparently the majority here, are of the opinion that citizens selected to serve on a jury and solemnly sworn to apply the law impartially, are nonetheless more likely to improperly infer guilt from a defendant's exercise of the right to not to testify when they are specifically instructed not to, than when the question of a defendant's silence is itself passed in silence, and the members of the jury are left to their own untutored instincts. If this were so, one could hardly understand how defense counsel or the majority could *ever* countenance such a pernicious instruction, or consider its use a matter of "tactics" for the defense to decide on a case by case basis.

I am of a contrary opinion. I believe firmly that a correctly instructed jury will at least attempt to place an appellant's silence out of their deliberations, while an uninstructed jury is far more likely to consider a defendant's silence, in the face of accusation following arrest, evidence of guilt.[1] As the Commonwealth correctly notes, heretofore, the presumption has been that the jury will follow the instructions of the trial court, not that it will ignore them, and do the opposite. *See Commonwealth v. Blount,* 387 Pa.Super. 603, 618, 564 A.2d 952, 960 (1989); *Commonwealth v. Nicholson,* 308 Pa.Super. 370, 380 n. 5, 454 A.2d 581, 586 n. 5 (1982) (citing cases)

I find the suggestion that the instruction is prejudicial, because it draws attention to the defendant's silence, thoroughly unpersuasive. While such reasoning may properly apply to passing improper remarks or to other minor or technical trial errors,[2] we can hardly expect a jury of twelve reasonably intelligent citizens to overlook the fact that the defendant, whose fate they are to determine, sat silent throughout the proceedings. In a case like this involving a crime as serious as rape, an appellant's silence might understandably be viewed as "deafening" by a juror untutored regarding the contrary mandate of our constitutional decisions explaining the need to prevent a defendant from being "compelled" by such an inference to incriminate himself in violation of his constitutional right against compelled self-incrimination.

More importantly, I reject the implicit assumption that *defense counsel's* tactical decisions should control the formulation of the *trial court's* jury instructions. The form and content of jury instructions are a matter left to the sound discretion of the trial court; while defense counsel may make requests or suggestions, the defendant has "no

1. *Cf. Commonwealth v. Monahan,* 378 Pa.Super. 623, 549 A.2d 231 (1988) (an inference of guilt is permitted regarding pre-arrest silence); *see also Jenkins v. Anderson,* 447 U.S. 231, 100 S.Ct. 2124, 65 L.Ed.2d 86 (1980) (same).

2. *See e.g. Commonwealth v. Osborn,* 364 Pa.Super. 505, 516 n. 6, 528 A.2d 623, 629 n. 6 (1987).

right to have any particular form of instruction given; it is enough that the charge clearly and accurately explains the relevant law." *Commonwealth v. Alvin,* 357 Pa.Super. 509, 518, 516 A.2d 376, 381 (1986) (per Kelly, J.; Cirillo, P.J., Wickersham, Brosky, McEwen, Olszewski, Montemuro, Beck and Johnson, JJ., join).

In its brief to this Court, the Commonwealth cites *State v. Rollins,* 49 Ohio App.2d 330, 361 N.E.2d 555 (1976), wherein an Ohio court addressing this same issue opined:

> The inherent power of the trial court and its statutory duty to instruct the jury fully and correctly on all the applicable law is not subject to the whims or strategic desires of any party. While instructions must always be precise and correct, we know of no decision that grants to any party the right to prevent full and adequate instructions on all the applicable law. Such a right, if granted, would undermine the jury system and the function of the trial judge.

> \* \* \* \* \* \*

> The tradition of justice in this country through a fair and impartial jury is based upon a complete submission by the trial judge of all applicable law and an honest consideration by the jury of the facts. Law and facts submitted to a jury present difficult problems and require fine judgment. In this delicate balance it is incomprehensible that any party be permitted to control the law or to require the court to withhold the law from the jury so as to force the jury to resolve a case in a vacuum.

361 N.E.2d at 557. I wholeheartedly agree with this position, and find it wholly consistent with the view expressed by this author for the unanimous *en banc* panel of this Court in *Commonwealth v. Alvin, supra.*

The majority in this case has decided to forge *new* chains with which to bind the trial court (and the public's interest in justice) to counsel's "tactical" decisions. I dissent to both the particular instance, and the general trend.

I believe that the proper role of the trial court is to exercise its supervisory authority over the conduct of the trial, including its authority to charge the jury on applicable principles of law, to keep the adversarial process directed toward the ultimate goal of discerning the truth and dispensing justice, rather than to permit prosecution or defense to cause or allow the proceedings to deteriorate into a contest of legal wits bearing no relation to fact or justice. While the trial court's role is "umpireal" rather than "imperial," the court nonetheless has the authority and sometimes the duty to intervene, with or against counsel's objections, to ensure that truth and justice rather than tactics and theatrics remain the focus of the proceedings.[3]

To those ends, the trial court has been granted broad discretion over the conduct of criminal trials. Absent a manifest abuse of discretion the trial court has broad authority over the conduct of *voir dire,* order of proof, admission of evidence, and conduct of direct and cross-examination, as well as the form and content of jury instructions. *See Commonwealth v. Slocum,* 384 Pa.Super. 428, 432–436, 559 A.2d 50, 52–56 (1989); *Commonwealth v. Grove,* 363 Pa.Super. 328, 340 & 346, 526 A.2d 369, 376 & 379 (1987) (collecting cases), *allocatur denied,* 517 Pa. 630, 539 A.2d 810 (1987); *Commonwealth v. Alvin, supra.*

In *Commonwealth v. King,* 378 Pa.Super. 553, 549 A.2d 195 (1988), this author observed for a unanimous panel:

A trial judge has a right and sometimes a duty to question witnesses to clarify existing facts and to elicit new facts, though the questioning should not be done in a biased or protracted manner. It is a right which the trial judge must exercise with caution, and with due regard for the common law preference for clarification by adversarial cross-examination, rather than judicial interrogation. Particular care must be taken so that the questions do

---

**3.** That is not to say, however, that a trial court may restrain counsel from "breathing life" with all its emotions "into otherwise sterile words," or from otherwise placing the proceedings in the true context of the lives involved. *See Commonwealth v. Slocum,* 384 Pa.Super. 428, 441, 559 A.2d 50, 56 (1989).

not usurp or unduly encroach upon the fact finding function of the jury by suggesting judicial disbelief of particular testimony or a judicial opinion on one or more issues for or against one side or the other.

Nonetheless, "[a] courtroom is a court of justice and not just a battleground for the tilting of attorneys or a testing of their wits and oratory,—to so limit it would often jeopardize or defeat justice." It is the purpose of a criminal trial to ascertain the truth, and it is the business of the trial judge to see that that end is obtained. Thus, it is proper for the trial court to ask questions about facts which did not appear from either counsel's examination of the witness. Indeed, the trial court may go so far as to recall a witness to supply an omission of proof as to a material issue.

549 A.2d at 197 (collecting cases, citations omitted).[4]

The majority's reliance upon *Commonwealth v. Danzy*, 225 Pa.Super. 234, 310 A.2d 291 (1973), to justify the new restrictions imposed, is misplaced. In *Danzy*, this Court correctly rejected a claim that reversible error was committed in instructing the jury on defendant's right to remain silent in absence of a request for, or an objection to, the instruction challenged on appeal. The decision itself was expressly grounded upon the defendant's *waiver* of any challenge by failing to preserve a timely objection to the

---

4. In a similar vein the learned United States Supreme Court Justice Felix Frankfurter once opined:

> While a court room is not a laboratory for the scientific pursuit of truth, a trial judge is surely not confined to an account, obviously fragmentary, of the circumstances of a happening [ ...] when he has at his command the means of exploring them fully, or at least more fully, before passing legal judgment. A trial is not a game of blind man's bluff; and the trial judge—[...]—need not blindfold himself by failing to call an available vital witness simply because the parties, *for the reasons of trial tactics,* choose to withhold his testimony.
>
> *Federal judges are not referees at prizefights but functionaries of justice. As such they have a duty of initiative to see that the issues are determined within the scope of the pleadings, not left to counsel's chosen argument.*

Johnson v. United States, 333 U.S. 46, 54, 68 S.Ct. 391, 395, 92 L.Ed. 468, 474–75 (1948). (Emphasis added).

jury charge in accordance with Pa.R.Crim.P. 1119(b). The statement in the opinion that "whether the charge given is the defendant's choice," was plainly *dicta*, and of no precedential authority. As the statement was unaccompanied by any analysis or authority explaining the origin, nature, or scope of this supposed right, I would accord the *dicta* no persuasive authority either.

The decision in *Lakeside v. Oregon*, 435 U.S. 333, 98 S.Ct. 1091, 55 L.Ed.2d 319 (1978), made it clear that federal constitution provided no right to defendants to preclude the trial courts from issuing an instruction, over defendants' objections, on the jury's obligation not to draw a negative inference from defendant's exercise of his right to not to testify. I agree that *Lakeside v. Oregon, supra*, expressly acknowledged that the states were free to adopt constitutional provisions, state statutes, or procedural rules which would bind the trial court to the defendants' tactical choices in these circumstances. I cannot agree, however, that this Court may impose such a restriction on the trial courts' discretion by the simple expedient of extending an inference from *dicta* contained in a prior decision, which itself suggested no legal basis to impose such a restriction.

The majority considers the restriction they impose "reasonable." I do not. The instruction given by the trial court here correctly addressed an applicable point of law. I can see no public interest to be advanced by permitting defendants to *speculate* upon the tactical merit of passing the issue in silence, rather than addressing the issue directly by instructing the jury correctly regarding their duty. If a defendant bets wrongly and an uninstructed jury bases its verdict in whole or in part on the impermissible inference feared, the interests of public justice, as well as defendant's personal interests, would be sacrificed. That is a sacrifice trial courts have every right to prevent.

My disagreement with the majority on policy grounds, however, is a secondary matter here. My primary ground for dissent is the absence of authority for this Court to impose the restriction imposed by the majority here, wheth-

er or not such restriction would be "reasonable" if properly enacted by the legislature, promulgated by our Supreme Court, or compelled by amendment to our Constitution.

What this Court thinks our legislature, our Supreme Court or the citizens of the Commonwealth ought to do, with their authority to enact statutes, promulgate procedural rules, and amend the constitution, is not law. As yet, the trial courts' general authority over the content of its jury instructions in Pennsylvania is unrestricted in this respect. This Court cannot alter that fact without some *explicit* basis of authority to do so. Neither appellant, nor the majority, has identified any such authority. No statute or procedural rule is cited; nor do I read the majority opinion to suggest that the right conferred here, *i.e.* to elect whether or not an instruction is given on the jury's duty not to draw a negative inference from the defendant's exercise of his right not to testify, is *mandated* by the Pennsylvania Constitution. Had the majority indicated that it intends to "constitutionalize" this supposed right, and thereby render it immune from statutory or procedural abrogation or restriction, I would even more vigorously dissent. I find nothing in our Constitution which could be construed to provide such a "constitutional" right.

Appellant, like the majority, has based the bulk of his argument on the illusory authority of the *dicta* from *Danzy*. Appellant also cites, however, *Commonwealth v. Fleck*, 372 Pa.Super. 546, 539 A.2d 1331 (1988), and several cases from sister states in support of his contention that the trial court committed reversible error. I find these authorities wholly unpersuasive.

In *Commonwealth v. Fleck, supra,* a panel of this Court reversed a simple assault conviction because a trial court judge dared to intervene to prevent a jury from having to chose between the false dichotomy of an absolute acquittal or a conviction of simple assault by unprovoked attack, when the evidence presented at trial plainly suggested the alternative of a the lesser offense of simple assault by mutual assent. The panel found that the trial judge had

usurped both defense and prosecution functions by instructing the jury, *sua sponte,* on the lesser crime. 539 A.2d at 1332.

Appellant argues that *Fleck* demonstrates that "uninvited interference with defense strategy" by the trial court "is not tolerated" in this Commonwealth. (Appellant's Brief at 16). The Commonwealth responds by attempting to distinguish *Fleck.* The majority makes no reference to *Fleck,* or to the conflicting positions of appellant and the Commonwealth as to its applicability to this case.

I agree with appellant that *Fleck* involves precisely the same kind of restrictions upon a trial court's authority as the appellant urges and the majority imposes here. While I also agree with the Commonwealth that the restrictions forged here are far more stringent than those involved in *Fleck,* I find that the difference is one of degree rather than kind. I am not inclined to merely distinguish *Fleck.* Rather, I would expressly and unequivocally disavow the sweeping language of the panel decision in *Fleck,* regarding the role of a trial court in instructing juries, in this *en banc* case.

The panel in *Fleck* cited *Hrivnak v. Perrone,* 472 Pa. 348, 372 A.2d 730 (1977), *Commonwealth v. Musi,* 486 Pa. 102, 404 A.2d 378 (1979), *Commonwealth v. Westcott,* 362 Pa. Super. 176, 523 A.2d 1140 (1987), and *Commonwealth v. Donaldson,* 339 Pa.Super. 237, 488 A.2d 639 (1985), in support of its "improper usurpation of defense tactics and prosecutorial authority" rationale for reversal. None of these cases actually supports the dramatic restrictions on the discretion of the trial court regarding jury instructions which the *Fleck* decision purported to impose.

In *Hrivnak v. Perrone, supra,* our Supreme Court opined that "a trial judge is charged with the responsibility of defining all *pertinent* questions of law and clarifying the issues to be resolved by the jury," but "while [the trial judge] must crystalize the issues raised by the litigants and explain all the relevant principles of law, [the trial judge] may not assume the advocate's function of introducing

theories not raised by the parties." 372 A.2d at 732–33. (Emphasis in original). I find the *Fleck* panel's reliance on *Hrivnak v. Perrone* misplaced in that *Hrivnak* was a *civil* case wherein the absence of "public justice" interests, inherent in criminal cases like *Fleck* and the instant case, naturally resulted in greater systemic deference to the civil litigants' tactical choices in presenting theories of liability or defense. *Cf. Commonwealth v. Carson*, 510 Pa. 568, 570, 510 A.2d 1233, 1234 (1986) (explaining the difference between civil and criminal proceedings in these general respects). Moreover, even assuming the general applicability of the reasoning in *Hrivnak v. Perrone, supra*, to criminal cases, it is far from clear that our Supreme Court would deem either a jury instruction on a lesser included offense arguably supported by the evidence presented, or instructions on the jury's duty not to draw negative inferences from a defendant's exercise of his right not testify, sufficiently analogous to the "different theory of civil liability" scenario involved in *Hrivnak v. Perrone*, to fall within the rule espoused in that case.[5] Without clearer mandate, I

**5.** If civil cases properly may be relied upon in this context, then I would note the inconsistency between the *Fleck* panel's analysis of *Hrivnak v. Perrone*, and the following analysis from *Perigo v. Deegan*, 288 Pa.Super. 93, 431 A.2d 303 (1981):

Appellant contends next that the lower court erred in *sua sponte* instructing the jury on the theory of wanton and reckless misconduct. Only issues which are relevant to the pleadings and proof may become the subject of a jury instruction. *See e.g., Heymann v. Electric Service Manufacturing Co.*, 412 Pa. 338, 194 A.2d 429 (1963); *Hronis v. Wissinger*, 412 Pa. 434, 194 A.2d 885 (1963). "Although a certain burden rests on the litigants to submit written points for charge to the court requesting instructions on their theories of the case, it is the duty of the trial judge fully to instruct the jury as to the law applicable to the facts even in the absence of a request by the parties." T.S. Feldman, *Pennsylvania Trial Guide* § 13.1 (1973). *See also Smith v. Clark*, 411 Pa. 142, 190 A.2d 441 (1963). Because wanton and reckless misconduct was properly raised by plaintiff's complaint and the proofs adduced at trial, the trial judge properly instructed on that theory even though it had not been argued by either counsel. *Yorkshire Worsted Mills v. National Transit Co.*, 28 Del.Co.Rpts. 402, 411 (C.P.Delaware Co.1939). *Cf. Hrivnak v. Perrone*, 472 Pa. 348, 354–56, 372 A.2d 730, 732–33 (1977) (trial judge erred in *sua sponte* instructing jury on a theory of recovery raised by the pleadings but refuted by plaintiff's evidence at trial). Thus,

would not extend *Hrivnak v. Perrone* in the manner suggested.

Both *Commonwealth v. Musi, supra,* and *Commonwealth v. Wescott, supra,* involved allegations of ineffective assistance of counsel based on counsel's failure to seek lesser included offense instructions. In both cases, trial counsel's decision not to seek the instruction was deemed to have had a reasonable tactical basis. That such a decision could be deemed to have been tactical, however, in no way establishes the existence of a concomitant right to *compel* the trial court to acquiesce in defense counsel's tactical choice. If that was sufficient to establish such a right, then the trial court's supervisory powers over the conduct of jury trials would soon be at an end. Counsel, for various tactical reasons, may elect not to raise objections to obvious hearsay or other plainly inadmissible evidence (as, for example, to permit a *plaintiff* to thereby "open-the-door" to other otherwise inadmissible *defense* evidence). Certainly such tactical decisions could not remove the trial court's authority to act without objection to exclude inadmissible evidence. *See Commonwealth v. King, supra; Commonwealth v. Grove, supra.* The existence of a tactical basis for a decision does not establish the existence of a positive right to the advantage sought; the concepts are simply not necessarily mutually inclusive. Consequently, reliance on *Musi* and *Westcott* in *Fleck* was misplaced. *Musi* and *Westcott* decided only the existence of a tactical basis for counsel not to seek the jury charge in question, not the right to preclude the trial court from giving the charge, *sua sponte.*

the lower court did not err in instructing the jury on the theory of wanton and reckless misconduct.
431 A.2d at 305–06. I note particularly the limited scope accorded the *Hrivnak* precedent in *Perigo* by this Court. Rather than construing *Hrivnak* as a bold affirmation of the supposed sanctity of counsel's tactical decisions, *Perigo* construed *Hrivnak* to involve a type of estoppel restriction on introducing theories of liability arguably raised by plaintiff's pleadings and *defense* evidence, but plainly contradicted by the *plaintiff's* evidence. Viewed in such a light, *Hrivnak* provides no support for the decision in *Fleck,* and is entirely inapposite here.

*Commonwealth v. Donaldson, supra,* was cited in *Fleck* in support of the suggestion of an usurpation of the prosecution's function. *Donaldson* involved an appeal from an order *sua sponte* amending criminal charges at a preliminary hearing, dismissing a greater charge, and substituting a similar lesser charge *with different elements.* 488 A.2d at 640–41. I agree that the prosecution has broad discretion in deciding which charges to pursue, and that the trial court may not circumvent the prosecutor's authority to choose which charges to pursue with jury instructions on uncharged crimes, regardless of what the evidence actually presented might suggest regarding the existence of other uncharged offenses. *Cf. Commonwealth v. Porrecca,* 389 Pa.Super. 553, 568–569 & n. 8, 567 A.2d 1044, 1050–52 & n. 8 (1989); *Commonwealth v. Schmuck,* 385 Pa.Super. 617, 625 & n. 1, 561 A.2d 1263, 1267 & n. 1 (1989).

The decision in *Donaldson* is circumscribed, however, by well established precedent that an indictment or information implicitly contains *all* lesser included offenses to the charges set forth in the indictment or information. *See Commonwealth v. Pemberth,* 339 Pa.Super. 428, 429, 489 A.2d 235, 236 (1985). The signature requirement of Pa.R. Crim.P. 225, which was the cornerstone of the *Donaldson* decision, does not require that the prosecution separately set forth lesser included offenses, nor does it empower prosecutors to force false dichotomies on juries by preventing judges from instructing juries regarding arguably applicable lesser included offenses.

Whether or not the result reached in *Fleck* could be supported by *Donaldson* would then turn on whether 18 Pa.C.S.A. § 2701(b) was a lesser included offense of 18 Pa.C.S.A. § 2701(a). Resolution of that question is not necessary here. What is necessary here, is an acknowledgement of the very limited nature of the restriction which *Donaldson* and Pa.R.Crim.P. 225 impose.

Upon review of the authorities cited in *Fleck,* I find no legal basis for the imposition of the restrictions upon the trial court's jury charging authority which the language of

the *Fleck* opinion suggests. I would disavow the restrictions in *Fleck* which would bind the trial court to defense and prosecution tactical decisions, and would not extend them to reach the scenario involved in this case.

I note that the restrictions suggested in *Fleck* are inconsistent with prior decisions of this Court. For example, in *Commonwealth v. Grove, supra,* this Court found no error in the trial court's decision to instruct the jury regarding the Slayer's Act, *sua sponte,* over defense counsel's objections. 526 A.2d at 376. Likewise, in *Commonwealth v. Davis,* 331 Pa.Super. 285, 480 A.2d 1035 (1984), this Court found no error in the trial court's decision to instruct the jury regarding a lesser included offense, *sua sponte.* 480 A.2d at 1044 (there is no indication as to whether an objection was made; although, if one had not been made, the issue would necessarily have been waived—*Commonwealth v. Danzy* ). Finally, in *Commonwealth v. Franklin,* 306 Pa.Super. 422, 452 A.2d 797 (1982), this Court found no error in the trial court's decision to instruct the jury, *sua sponte,* on the law of theft as it pertained to the requirement of criminal intent to commit a crime as an element of a burglary offense. 452 A.2d at 800 (again, presumably over defense objection).

I cannot see how *Grove, Davis,* and *Franklin* could withstand the rationale of non-interference with defense tactics and prosecutorial charging authority espoused in *Fleck,* and again here by the majority. Either a trial court may instruct the jury *sua sponte* on applicable principles of law, or it may not. The majority has not set forth, and I cannot discern, any unifying principles which would permit a trial court to determine when it may act *sua sponte* as in *Grove, Davis,* and *Franklin,* and when it is bound by either defense or prosecution's "tactical" decisions as in *Fleck,* and again in this case.

I would evade this morass by returning to solid ground. I would reaffirm that the trial court's discretion in charging a jury *sua sponte* in criminal cases is limited only in the following respects:

1) the instruction must address a point of law applicable to the crime or crimes charged, *Commonwealth v. Donaldson, supra,* 488 A.2d at 641–42;

2) the instruction must address a point of law applicable to the actual facts presented at trial, *Commonwealth v. Grove, supra,* 526 A.2d at 378;  and,

3) the form, content, and delivery of the instruction must fully, correctly, and impartially explain the point of law addressed. *Commonwealth v. Alvin, supra,* 516 A.2d at 381.

Beyond these restrictions, I find no authority for this Court to supplant its view as to how a jury ought be instructed for that of the trial court.

Finally, I note that I have carefully reviewed and am completely unpersuaded by the decisions of our sister states which appellant cites as persuasive authority. While appellant cited only cases which found reversible error, and the Commonwealth responded by citing only cases which did not, I note that there are numerous cases from jurisdictions across the country which have held variously that a jury instruction, over defense objection, on the jury's duty not to draw a negative inference from a defendant's exercise of the right not to testify is:  1) required;  2) proper, but not required;  3) proper, but not recommended;  4) improper, but not reversible error;  5) improper, but not reversible error given the facts of the particular case;  6) improper and reversible error given the facts of the particular case;  7) improper and reversible error. *See generally* Annotation, *Propriety Under Griffen v. California And Prejudicial Effect of Unrequested Instruction That No Inferences Against Accused Should Be Drawn From His Failure To Testify,* 18 ALR3d 1335, 1335–39 (1968 & 1989 Supp.) (collecting cases). There is no clear majority position. *Id.*[6] Having surveyed the decisions in favor of the above alter-

**6.** I in no way suggest that the presence or absence of a "majority" position is dispositive. It is the persuasiveness of the reasoning in opinions of a sister states' courts rather than simply the number of sister state decisions, which gives or denies such opinions persuasive authority.

nate positions, I remain of the opinion that only position 2, *i.e.* "proper, but not required," expresses the degree of deference to a trial court's sound discretion required of an intermediate appellate court in such matters.

In light of the fact that I would find no error, I of course concur in the determination that the challenged charge did not prejudice appellant in this case. Based on the foregoing, I *Dissent* to the majority's opinion, and *Concur In the Result* only.

JOHNSON, Judge, concurring and dissenting:

I am in complete agreement with the majority that where a criminal defendant does not take the stand and specifically requests that the court not comment upon his or her silence, it is error for the court to ignore this request and give an instruction regarding the right to remain silent. I respectfully dissent from the determination of the majority that the error was harmless under the facts of this case.

Initially, I question whether the court's objective in establishing the rule that the court may not comment upon the defendant's right not to testify after a request that it not do so is not substantially compromised by applying a harmless error standard. I am not at all sure that the effect upon the outcome of trial of a fifth amendment instruction can ever be discerned. Regardless of whether, prior to an instruction, the jury contemplated the defendant's silence, most assuredly this silence is brought to the jury's attention once an instruction is given. Where the instruction has been given over explicit request, the very purpose of the rule to protect the defendant's ability to control the course of his defense is undermined.

We must recognize that the error here stands in a different posture than most that we review. In most cases, the court commits an error to which the defense then objects. Some prejudice ordinarily inures, even if de minimis in character. Thus, an inquiry into whether the error was harmless is appropriate because the error, while presum-

ably unavoidable, may not have been one that affected the verdict.

By contrast, we now address a situation where the defense makes his or her request known in advance. Without counsel's explicit request that the court not give a fifth amendment instruction, no error exists. Where such a request is made, all prejudice to the defendant may be avoided entirely simply by honoring it. From the many cases of other jurisdictions in which a fifth amendment instruction given contrary to the defendant's request is considered error, I find few situations in which ignoring the request was proper. In the cases in which the trial court ignored the defendant's request, the defense, by its own actions, had rendered the request superfluous. In *Hunter v. State*, 492 N.E.2d 1067, 1069 (Ind.1986), a defendant objected to his co-defendant's request to have a fifth amendment instruction. The trial court, observing that the co-defendant was entitled to an instruction upon request, offered to sever the trial. The defendant refused this solution, leaving the court no choice but to instruct the jury in the joint trial on the right to remain silent over the defendant's objections. In *State v. Larson*, 358 N.W.2d 668, 671 (Minn. 1984), defense counsel's reference during closing argument to the defendant's silence made necessary the requested instruction.

However, if no such vitiating circumstances exist, we cannot ignore that the court alone is responsible for the error. The message we send to the trial courts by what the majority decides today suggests that requiring the trial court to honor the defendant's request not to have a fifth amendment instruction has no import unless there is scant evidence to support a conviction. For this reason, I would favor the approach of our sister states of Maryland in *Hardway v. State*, 317 Md. 160, 562 A.2d 1234 (1989) and of Massachusetts in *Commonwealth v. Buiel*, 463 N.E.2d 1172 (Mass.1984) requiring that a fifth amendment instruction, when defendant has specifically requested the court not to give one, be considered reversible error.

Of even more concern to me is the majority's application of the harmless error standard under the facts presented. If there were a circumstance in which the giving of a fifth amendment instruction over objection could be found harmless, this is not the case.

The majority correctly articulates the harmless error standard. Majority Op. at 285–287. However, the majority's analysis then fails to follow the requirements of *Commonwealth v. Story*, 476 Pa. 391, 383 A.2d 155 (1978). The analysis set forth in *Commonwealth v. Story, supra* has been applied to determine whether an erroneous jury instruction is harmless. *Commonwealth v. Whiting*, 358 Pa.Super. 465, 476–478, 517 A.2d 1327, 1333–1334 (1986). In order to find that an error is harmless, the evidence of guilt must be so overwhelming that the error pales by comparison. *Commonwealth v. Story*, 476 Pa. at 412, 383 A.2d at 166. If honest, fair minded jurors might very well have brought in not guilty verdicts, an error cannot be harmless simply because there also happens to be overwhelming evidence. *Commonwealth v. Story*, 476 Pa. at 413, 383 A.2d at 166. We must determine whether an error is harmless by scrutinizing the entire record, according weight only to uncontradicted evidence. *Commonwealth v. Story*, 476 Pa. at 413, n. 24, 383 A.2d at 166, n. 24.

It is irrelevant that the defendant has not challenged the sufficiency of the evidence or that the evidence is in fact sufficient to sustain the verdict. An analysis based upon the sufficiency of the evidence is an entirely different process which by its very nature considers evidence which has no place in determining whether an admitted error is harmless. "While we view evidence in the light most favorable to the Commonwealth in testing sufficiency, and thus resolve ambiguities and disputes in the Commonwealth's favor, ... in testing whether the evidence is overwhelming, those same ambiguities and disputes are crucial to the determination of whether the evidence compelled the result reached." *Commonwealth v. Cherry*, 474 Pa. 295, 307, n. 12, 378 A.2d 800, 806, n. 12 (1977).

The Commonwealth's case consisted of the complainant's testimony, the testimony of two corroborating witnesses that the complainant told of the alleged rape, the testimony of the officers who took the report, and physical evidence showing the presence of sperm and blood; the complainant was menstruating at the time of this incident. To show that sexual intercourse was non-consensual, the complainant testified that she was forced to have sex at knife point. The knife was never recovered. Rasheed's defense · was consent. The defense did not contest any evidence save the complainant's testimony and that of one corroborating witness.

The substance of the first corroborating witness' testimony was that the complainant told her of the rape. However, on cross-examination, defense counsel elicited that the first witness told an investigator, contrary to her own in-court testimony on behalf of the complainant who persuaded her to testify, that she knew nothing about the rape. N.T., September 17, 1987 at 30–31. In addition, both counsel entered into a stipulation that the defense was prepared to produce the testimony of the investigator to this effect. N.T., September 17, 1987 at 54. Thus, this evidence was in fact contradicted and cannot be considered under *Story, supra.*

The evidence which remains is the second corroborating witness' testimony that the complainant told him that she was raped and the testimony of the complainant regarding the actual attack, which is uncorroborated with respect to the element of forcible compulsion. Unquestionably, this Commonwealth accepts the sole testimony of the complainant as *sufficient* evidence of rape. *Commonwealth v. Gabrielson,* 370 Pa.Super. 271, 536 A.2d· 401 (1988) *alloc. denied* 518 Pa. 636, 542 A.2d 1365 (1988); *Commonwealth v. Flynn,* 314 Pa.Super. 162, 460 A.2d 816 (1983). What I question is whether this testimony is *overwhelming* evidence of rape in the context of establishing harmless error. Even if it is overwhelming, then I must question whether an error focusing the jury's attention upon the defendant's

silence and as a result inadvertently alluding to an absence of credibility under circumstances in which that credibility is crucial to the jury's determination, is harmless beyond a reasonable doubt.

I am not convinced that the complainant's testimony, whether considered through her eyes or those of the second witness, constitutes overwhelming evidence; its validity depends solely upon the complainant's believability. There is no physical evidence to corroborate the complainant's assertion that the defendant had a knife. And, as is the case in most rape incidents, there were no witnesses to the attack and no witnesses could otherwise testify to the defendant's intent to have forcible intercourse with the complainant.

By finding that the uncorroborated testimony of the complainant is overwhelming, we in effect act as trier of fact, judging from a cold record that the victim's testimony was so convincing that the jury would have found the defendant guilty even if the court, by its instruction, had not made them aware that the defendant did not testify on his own behalf. A jury faced with the testimony of the complainant and the court-underscored silence of the defendant may well accord more weight to the complainant's testimony. Considering a prosecutor's improper comments on a defendant's pre-trial silence in *Commonwealth v. Turner*, 499 Pa. 579, 583, 454 A.2d 537, 539 (1982), the supreme court observed:

> "We would be naive if we failed to recognize that most laymen view an assertion of the Fifth Amendment privilege as a badge of guilt." *Walker v. United States* [404 F.2d 900 (5th Cir.1968)], ... It is clear that "[t]he privilege against self-incrimination would be reduced to a hollow mockery if its exercise could be taken as equivalent either to a confession of guilt or a conclusive presumption of perjury." *Slochower v. Board of Higher Ed. of N.Y.* [350 U.S. 551, 76 S.Ct. 637, 100 L.Ed. 692 (1956)].

*Commonwealth v. Haideman*, 449 Pa. 367, 371, 296 A.2d 765, 767 (1972) (citations omitted).

Where the prosecutor improperly refers to the defendant's pre-trial silence, the harm to the defendant occurs because, until the error, the jury had not been aware that the defendant choose to exercise his fifth amendment rights by remaining silent. Where the court and not the prosecutor comments upon the defendant's in-court silence, the harm to the defendant does not necessarily flow from the jury's unawareness that defendant has chosen not to testify, but rather from the jury's *heightened* awareness that the defendant has chosen to remain silent. In the latter case, it is more difficult to evaluate the effect of the error upon the outcome of trial. However, it is precisely because we are unable to evaluate this effect that there exists a reasonable possibility that the error could have affected the trial's outcome.

In cases in which the credibility of the victim and defendant are pivotal to the jury determination, the trial court should be all the more cautious that it does not make statements which reflect upon the credibility of either. *C.f. Commonwealth v. Anskate*, 221 Pa.Super. 122, 289 A.2d 156 (1972). Rasheed did not testify, and nobody asserts that the trial court commented directly upon his credibility. However, there is sense to Rasheed's argument that the court's instruction on his fifth amendment right not to testify highlighted the fact that he did not testify, which in turn may have triggered "a confession of guilt or a conclusive presumption of perjury", *Turner, supra,* in the jury's mind. Given the lack of corroborating evidence that this incident involved forcible compulsion, I am unable to conclude beyond a reasonable doubt that the jury would still have found the defendant guilty if it had not been reminded of the defendant's silence. I would remand for a new trial. Hence, my dissent.

CIRILLO, President Judge, dissenting:

I respectfully dissent. I believe that Rasheed has waived the issue of whether the trial court committed reversible error by charging the jury, over the objection of defense

counsel, that he did not have to testify and that no unfavorable inference should be drawn against him for failing to testify.[1]

A review of the record reveals the following: Attorney Mark Goodman, counsel for Rasheed, did not make any request *on the record* regarding the jury charge *prior* to the time that the trial court gave the charge. However, after the Honorable Charles Klein charged the jury and gave the fifth amendment instruction, the following exchange took place:

THE COURT: Gentlemen, before I discharge the alternate jurors in this case, I ask you if there is anything that you believe I have misstated, omitted, distorted, or overlooked in my charge to the jury? Mr. Goodman?

MR. GOODMAN: The only thing, Your Honor, is something we discussed earlier, which can't be undone now. But I would like to put it on the record, and that is I asked the Court earlier to allow us not to charge on the defendant not testifying. I have done that because it is my belief that the charge is actually more prejudicial than nothing being said. I feel very strongly, and I do that fairly routinely. The Court had listened to me and denied my request and went ahead and instructed on the Fifth Amendment, anyway. And for that, I object. There is nothing that I can think of that I would want to say aside from that.

MR. McMONAGLE: I have nothing to add, Your Honor.

THE COURT: Well, Mr. Goodman, the defendant has certain Constitutional rights. He does not have to take the witness stand, and I have pointed out the law to the jury on that. If I did not charge on that subject at your

---

1. Rasheed presents the issue on appeal as
   Did not the trial court err by instructing the jury, over defense objection, with regard to appellant's silence at trial, where the defense objection to said instruction was premised on a reasonable trial strategy of not emphasizing appellant's failure to testify, and was in conformity with the holding of this Court, *en banc,* in *Commonwealth v. Danzy,* that "whether the charge is given is the defendant's choice"?

request, there would be a great possibility that when this trial is over, if he is convicted, that then you would be charged with ineffective assistance of counsel. So therefore, I have a simple statement of the law on that subject.[2]

On September 21, 1987, the jury found Rasheed guilty of rape and possession of an instrument of crime. Judge Klein notified Rasheed of his right to file post-trial motions and stated that anything not contained in Rasheed's written post-trial motions would be waived. On September 25, 1987, attorney Goodman filed post-trial motions. These motions, however, did not include a claim regarding the jury instruction issue. On October 2, 1987, supplemental post-trial motions were filed by attorney Goodman in which Rasheed claimed that the trial court erred in denying his request to have the court omit the fifth amendment instruction from its jury charge. The supplemental post-trial motions also stated that the fifth amendment instruction merely emphasized the fact that Rasheed did not testify and was extremely prejudicial. Further, these motions stated that the prosecutor had no standing to object to attorney Goodman's request to have the instruction omitted. The record shows *nothing* to indicate that attorney Goodman requested permission to file supplemental post-trial motions. On January 12, 1988, Rasheed filed post-trial motions *pro se*. These motions, like the original post-trial motions filed by attorney Goodman, did not include any claim regarding the jury instruction issue.

A review of the transcript of the hearing held on post-trial motions reveals that attorney Goodman raised, among other issues, the jury instruction issue. At the conclusion

2. As noted in the text, the record before us does not contain attorney Goodman's request to have Judge Klein omit the fifth amendment instruction prior to the time Judge Klein charged the jury. However, the exchange among counsel and Judge Klein demonstrates that attorney Goodman did make such a request, perhaps through his written points for charge or in a discussion off the record. Because I believe that the issue on appeal has not been properly preserved through the post-trial motion procedure, I will not delve into whether the issue was properly raised and preserved during the trial.

of the hearing, the trial court denied all post-verdict motions. In his opinion, Judge Klein specifically noted that he denied both sets of post-verdict motions, those filed by Rasheed *pro se* and those filed by defense counsel. With respect to the jury instruction issue, Judge Klein stated the following:

At the time of the argument before the [t]rial [j]udge at the hearing prior to sentencing, defense counsel complained about the court instructing the jury in his charge, over counsel's objection, with respect to defendant's decision not to take the witness stand in his own defense. *Counsel did not include this objection in his written post-verdict motions. The objection must therefore as having been waived and cannot be considered for appellant relief.* (emphasis added)

It is apparent that Judge Klein did not consider the merits of the jury instruction issue. I believe that the jury instruction issue is waived, for although supplemental post-trial motions were filed, they were filed without permission from the court[3] and the trial court did not consider them. *See Commonwealth v. Sheaff,* 365 Pa.Super. 613, 530 A.2d 480 (1987) *modified per curiam* 518 Pa. 655, 544 A.2d 1342 (1988); *see generally Commonwealth v. Hewett,* 380 Pa.Super. 334, 551 A.2d 1080 (1989) *alloc. denied,* 522 Pa. 583, 559 A.2d 526 (1989) (court interpreted *Sheaff* to address appellant's issues on the merits when although no permission was granted to file supplemental post-trial motions, the trial court had addressed the issues on their merits); *Commonwealth v. Markovitch,* 388 Pa.Super. 244, 565 A.2d 468

**3.** Rasheed incorrectly concludes that the trial court granted him permission to file supplemental post-trial motions. Judge Klein, after advising the defendant of his right to file post-trial motions within ten days, stated "[h]owever, additional grounds raised in support of such motions may be filed in writing after the transcription of the record if the transcript is necessary for these additional grounds." I do not believe that Judge Klein's statement nullifies the requirement that counsel obtain permission to file supplemental post-trial motions. *Commonwealth v. Mistretta,* 364 Pa.Super. 332, 528 A.2d 184 (1987). Moreover, Rasheed does not aver that the motions were filed after the original post-trial motions because transcription of the record was necessary to raise those issues contained in the supplemental post-trial motions.

(1989) (appellant claimed that trial counsel was, ineffective for failing to file timely post-trial motions, and the record demonstrated no order granting appellant leave to file post-trial motions *nunc pro tunc;* however, because the trial court, at the hearing on post-trial motions, indicated that it would accept the untimely filed motions and consider them on the merits, and because the trial court's opinion addressed the merits of these motions, we found that the appellant had not waived the issues contained in those motions); *Kurtas v. Kurtas,* 521 Pa. 105, 109, 555 A.2d 804, 806 (1989) (plurality) (our supreme court stated that "the trial court chose to ignore the untimely filing of appellant's post-trial motions and addressed the merits of the alleged errors. Such consideration was permitted under [Pa.R.C.P.] 126 and did not affect the trial court's jurisdiction, the superior court erred in not reviewing the merits of the appeal").

Had this issue been properly before this court I would have joined the well-reasoned concurring and dissenting opinion authored by Judge Johnson.