567 A.2d 1044

**COMMONWEALTH of Pennsylvania**

v.

**Walter PORRECA, Appellant.**

Superior Court of Pennsylvania.

Submitted Jan. 31, 1989.

Filed Oct. 17, 1989.

Reargument Denied Dec. 21, 1989.

Michael C. Cowley, Scranton, for appellant.

Gregory B. Abeln, Deputy Atty. Gen., Harrisburg, for Com., appellee.

Before KELLY, JOHNSON and MELINSON, JJ.

KELLY, Judge:

Appellant, Walter Porreca, appeals from an order denying allowance to withdraw a guilty plea following imposition of a sentence which exceeded the *non-binding* sentencing recommendation made by the Commonwealth in accordance with the terms of a court approved plea agreement, as well as the sentence which appellant had previously been led to believe would be imposed under a written agreement with a deputy attorney general which had not been submitted for judicial approval under Pa.R.Crim.P. 319. We affirm.

The relevant facts and procedural history may be summarized as follows. Between 1980 and 1982, appellant was a managing participant in a large scale stolen car ring. In December 1984, though he had been out of the operation for approximately a year and a half, appellant became aware that the police were investigating his previous involvement in the operation. Appellant approached the police and voluntarily gave a statement which implicated himself in 112 crimes relating to the stolen car ring.

Subsequently, in 1985, appellant entered into a written plea agreement with the Commonwealth which required his cooperation with a police investigation of the operation in return for a promise to reduce the charges which would be brought against him from 112 various criminal counts to one count each of corrupt organization and theft by unlawful taking, and the further promise of a prosecutorial recommendation of a sentence of no more than "county time," *i.e.*, a five year maximum sentence. *See* 42 Pa.C.S.A. § 9762. This written plea agreement, signed by the parties, was not taken before a common pleas court judge for the

required judicial approval at that time. *See* Pa.R.Crim.P. 319.

For three years, appellant provided the police with complete and ungrudging cooperation. This cooperation involved repeated service as a "wired" informant, and as such he was required to be on call for service around the clock as needed. It was the opinion of the investigating officer who coordinated appellant's activities that appellant had acted above and beyond the call of duty imposed by his agreement, and had in fact knowingly put his life in jeopardy. The officer also indicated that appellant's cooperation was the critical factor in securing 45 to 50 of the 81 convictions which resulted from the investigation.

After appellant's cooperation had been substantially completed, he was brought before the common pleas court for entry of his guilty plea in accordance with the 1985 plea agreement. The judge assigned, however, indicated his absolute unwillingness to accept *any* plea agreement in this case which provided for a specific sentence to be imposed by the trial court at sentencing. No plea was accepted at that time.

Subsequently, a second, less favorable, plea agreement was submitted for approval of the trial court, which specifically characterized the prosecution's sentencing recommendation as *not binding on the sentencing judge.* The agreement provided in pertinent part:

12. The defendant understands that *the court is not a party to and is not bound by this agreement nor by any recommendations made by the parties.* Thus, the court is free to impose upon the defendant any sentence up to and including the maximum sentence of fine and imprisonment together with the cost of prosecution.

13. *If the court imposes a sentence with which the defendant is dissatisfied, the defendant will not be permitted to withdraw any guilty plea for that reason alone,* yet if the Court refuses to concur with any other aspects of this Agreement, he will be

allowed to withdraw his guilty plea pursuant to the Pennsylvania Rules of Criminal Procedure.

(Plea Agreement 9/11/86). (Emphasis added). The plea, thus expressly and unequivocally conditioned, was accepted by the judge originally assigned.

That judge later recused himself as the result of his contemporaneous recusal from an unrelated case in which appellant was also involved. This case was assigned then to a second judge for sentencing.

At sentencing, in accordance with the plea agreement, the Commonwealth provided extended argument (described aptly by the sentencing court as eloquent) in favor of the imposition of a maximum sentence of no more than county time. Counsel for appellant echoed and expanded upon the Commonwealth's arguments in favor of leniency, and suggested that a sentence of probation be imposed.

Nonetheless, the trial court imposed an aggregate term of two to *six* years imprisonment. As all sentences with more than a *five* year maximum must be served in a state rather than a county facility, 42 Pa.C.S.A. § 9762, the sentence imposed was not within the bounds of the 1985 *unapproved* plea agreement, or the *non-binding* prosecutorial recommendation made in accordance with the terms of the plea agreement actually accepted and approved by the trial court.

Appellant petitioned to withdraw his plea based upon the sentencing judge's non-concurrence in the Commonwealth's sentencing recommendation and the failure to sentence consistently with the 1985 unapproved plea agreement. Appellant also contended that the plea colloquy was inadequate.[1] The motion was denied, and this timely appeal followed.

---

1. We reject this claim on the basis of the record of the clear and comprehensive oral and written plea colloquy, which plainly demonstrates the meritlessness of this contention. (N.T. 9/11/86). We note that appellant's inconsistent answer to the inartfully drafted and perhaps confusing 12th question of the written plea colloquy is not deemed material in light of appellant's signature on the clearly worded plea agreement and his oral representation at the plea hearing that

## I. *Rejection of Prosecution's Leniency Recommendation*

Appellant contends that the rejection of the Commonwealth's expressly non-binding sentencing recommendation mandates that allowance to withdraw his plea be granted. We cannot agree.

On this issue, the Commonwealth as appellee has come to the aid of its cooperative informant and argues forcefully that the trial court was required to follow the Commonwealth's sentencing recommendation or to reject the plea. In support of this argument, the Commonwealth cites the following *dicta* from our Supreme Court's decision in *Commonwealth v. Bennett*, 512 Pa. 525, 517 A.2d 1248 (1986), "if the court does not concur in the terms of the plea agreement and defendant petitions to withdraw the plea in a timely manner, the court must permit the withdrawal of the plea." 517 A.2d at 1251–52.

The Commonwealth's reliance upon this excerpt is misplaced. First, as the appeal was decided against Bennett based upon his failure to file a timely motion to withdraw his plea, the excerpt (as attempted to be applied here) is mere *dicta* without the authority of binding precedent. Moreover, the offered application of the *dicta* to the facts of this case misconstrues the limits placed upon the trial courts by Pa.R.Crim.P. 319, to which our Supreme Court was referring in *Bennett*.

In *Commonwealth v. Osteen*, 381 Pa.Super. 120, 127–28, 552 A.2d 1124, 1128 (1989), this Court recently rejected a claim that a plea agreement had been broken and that allowance to withdraw the plea was mandated in circumstances very similar to those presented here. In *Osteen*, this Court emphasized that the limited nature of the plea agreement was clearly and unequivocally expressed to the

he understood and accepted the terms of the agreement, both of which occurred the same day the written plea colloquy was signed. (N.T. 9/11/86).

defendant, who nonetheless opted to accept even the limited plea agreement as a true bargain.[2]

The limits of the plea agreement finally approved in this case were even more clearly expressed to appellant herein, than the limits of the agreement in *Osteen* had been explained to Osteen. Here, the trial court expressly rejected the original proposed plea agreement which had included the promise of an *unconditioned and presumably binding recommendation* of no more than county time, and then subsequently accepted a plea agreement which included an *expressly conditioned non-binding recommendation* of no more than county time. Under those circumstances, the express and unequivocal terms of appellant's plea agreement, "created no expectation whatsoever as to what sentence would be imposed." *Commonwealth v. Osteen, supra,* 552 A.2d at 1128.

Thus, it can be fairly said that our Supreme Court's *dictum* in *Bennett,* that Rule 319 "is simply a directive to the court that if the court does not concur with the terms of the plea agreement and a defendant petitions to withdraw the plea in a timely manner, the court must permit the withdrawal of the plea", was in no sense contravened. The trial court in fact did not reject *"the terms of the plea agreement."* 517 A.2d at 1251–52 (emphasis added). *Cf. Commonwealth v. Kioske,* 337 Pa.Super. 593, 487 A.2d 420 (1985) (although the terms of plea agreements must be enforced, the terms were not in fact violated; hence, no relief was appropriate). Succinctly, the trial court's concurrence in the Commonwealth's sentencing recommendation was expressly and unequivocally excluded from the "terms of the plea agreement" in this case.

**2.** We note, parenthetically, that one can easily see why a defendant might consider an agreement that the prosecutor would make a favorable sentencing recommendation or even merely agree to stand silent a clear bargain, even without *any* binding commitment as to what sentence the trial court might eventually impose. Though the sentencing court's discretion would remain unfettered in such a context, nonetheless, it would be exercised without the influence of argument for a stiff sentence which might counterbalance or even outweigh defense counsel's plea for leniency.

In an open plea agreement, there is an agreement as to the charges to be brought, but no agreement at all to restrict the prosecution's right to seek the maximum sentences applicable to those charges. At the other end of the negotiated plea agreement continuum, a plea agreement may specify not only the charges to be brought, but also the specific penalties to be imposed. In between those extremes there are various options, including an agreement to make no recommendation or, as here, an agreement to make a favorable but non-binding recommendation. So long as the limits of the agreement are plainly set forth on the record, understood and agreed to by the parties, and approved by the trial court, we find no impediment in *Bennett* or Pa.R.Crim.P. 319(b) to the offer, acceptance, performance or enforcement of such plea agreements. *Cf. Commonwealth v. Osteen, supra,* 552 A.2d at 1128, *citing Commonwealth v. Shaffer,* 498 Pa. 342, 346, 446 A.2d 591, 592–93 (1982). Therefore, we find that appellant's motion to withdraw his plea based upon the sentencing court's nonconcurrence in the prosecution's expressly and unequivocally non-binding sentencing recommendation was properly denied.[3]

## II. *Breach of the 1985 Unapproved Plea Agreement*

Appellant also argues that the trial court erred in failing to permit him to withdraw his plea based upon the

---

3. Courts in other states have reached the same conclusion when the non-binding nature of the prosecution's sentencing recommendation was clearly explained to the accused prior to the acceptance of a negotiated guilty plea. *See State v. Cagnina,* 113 Ariz. 387, 555 P.2d 345, 346 (1976); *State v. Adams,* 342 So.2d 818, 820 (Fla.1977); *State v. Gumienny,* 58 Haw. 304, 568 P.2d 1194, 1199 (1977); *Almada v. State,* 108 Idaho 221, 697 P.2d 1235, 1237 (1985); *People v. Gierbolini,* 128 Ill.App.3d 794, 84 Ill.Dec. 96, 471 N.E.2d 625 (1984); *Walker v. State,* 420 N.E.2d 1374, 1376 (Ind.1981); *Commonwealth v. Cepulonis,* 9 Mass.App.Ct. 302, 400 N.E.2d 1299, 1304 (1980); *People v. King,* 104 Mich.App. 459, 461–63, 304 N.W.2d 605, 606 (1981); *State v. Hanson,* 627 P.2d 53, 55 (Utah 1981); *Holler v. Commonwealth,* 220 Va. 961, 265 S.E.2d 715, 718–19 (1980); *see also* Annotation, *Right to Withdraw Guilty Plea in State Criminal Proceeding Where Court Refuses to Grant Concessions Contemplated by Plea Bargain,* 66 ALR3d 902 (1975 & 1988 Supp.) (§ 5(d) Mere promise to recommend concession; where defendant has been informed that recommendation is not binding).

trial court's decision not to exercise its sentencing discretion consistently with the terms of the written, substantially performed, but judicially unapproved plea agreement which was entered into by appellant (uncounselled) and a deputy attorney general in 1985. In dismissing this claim, we find it appropriate to discuss the legal significance of the judicially unapproved plea agreement generally, in the hope that misunderstandings such as occurred here will not be repeated in future cases.

Though numerous cases have been decided in Pennsylvania appellate courts affirming the general proposition that the prosecution may not violate the express terms of an executed plea agreement,[4] the instant case, involving a decision by a trial court judge not to exercise judicial sentencing discretion consistent with the terms of a written, substantially executed, but judicially unapproved plea agreement, is apparently a case of first impression. In addressing the significance of these circumstances, we turn to decisions of the United States Supreme Court for initial guidance.

In *Santobello v. New York*, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971), the Supreme Court considered a due process challenge based upon a prosecutor's violation of a condition in a plea agreement that the prosecution would make no recommendation with regard to the sentence to be imposed. The Supreme Court unanimously held that, "when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." 404 U.S. at 262, 92 S.Ct. at 499, 30 L.Ed.2d at 445.

Though the Court unanimously concluded that the agreement had been breached, unanimity was broken with respect to the appropriate remedy to be provided. The majority agreed to remand the case to the trial court with

---

**4.** *See e.g. Commonwealth v. Fruehan*, 384 Pa.Super. 156, 557 A.2d 1093 (1989); *Commonwealth v. Williams*, 333 Pa.Super. 77, 481 A.2d 1230 (1984); *accord Commonwealth v. Kioske, supra.*

directions to either conduct resentencing in accordance with the terms of the plea agreement before a different sentencing judge, or to permit the defendant to withdraw the plea. 404 U.S. at 263, 92 S.Ct. at 499, 30 L.Ed.2d at 433. Justice Douglas agreed with the allowance of discretion in the state courts to determine the appropriate remedy, *i.e.* specific performance of the plea bargain or allowance to withdraw the plea, but emphasized that the defendant's choice should be given "considerable, if not controlling, weight inasmuch as the fundamental rights flouted by a prosecutor's breach of a plea bargain are those of the defendant not the State." 404 U.S. at 267, 92 S.Ct. at 501, 30 L.Ed.2d at 43; *accord Commonwealth v. Williams*, 333 Pa.Super. 77, 84, 481 A.2d 1230, 1234 (1984). Justice Marshall, with whom Justices Brennan and Stewart joined, indicated that *controlling* weight should be given defendant's preference in such cases. *Id.*, 404 U.S. at 268–69, 92 S.Ct. at 502, 30 L.Ed.2d at 436–37.

In *Mabry v. Johnson*, 467 U.S. 504, 104 S.Ct. 2543, 81 L.Ed.2d 437 (1984), on the other hand, the Supreme Court unanimously held that an unexecuted, accepted, but subsequently withdrawn, proposed plea agreement could *not* be considered as an inducement to enter a plea made *after* the offer was withdrawn, and that *Santobello v. New York*, *supra*, did not mandate either allowance to withdraw the plea entered or specific performance of the original proposed plea agreement in such circumstances. The Court explained:

It is only when the consensual character of the plea is called into question that the validity of a guilty plea may be impaired. *In Brady v. United States*, 397 U.S. 742, 25 L.Ed.2d. 747, 90 S.Ct. 1463 (1970), we stated the applicable standard:

" '[A] plea of guilty entered by one fully aware of the direct consequences, including the actual value of any commitments made to him by the court, prosecutor, or his own counsel, must stand *unless induced by threats* (*or promises* to discontinue improper harassment), misrepre-

sentation (*including unfulfilled or unfulfillable promises*), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business (e.g. bribes).' "

Thus, only when it develops that the defendant was not fairly apprised of its consequences can his plea be challenged under the Due Process Clause. *Santobello v. New York,* illustrates the point. We began by acknowledging that the conditions for a valid plea "presuppose fairness in securing agreement between an accused and a prosecutor. ... The plea must, of course, be voluntary and knowing and if it was induced by promises, the essence of those promises must in some way be made known." It follows that when the prosecution breaches its promise with respect to an executed plea agreement, the defendant pleads guilty on a false premise, and hence his conviction cannot stand: "[W]hen a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled."

*Santobello* demonstrates why respondent may not successfully attack his plea of guilty. *Respondent's plea was in no sense induced by the prosecutor's withdrawn offer;* unlike Santobello, who pleaded guilty thinking he had bargained for a specific prosecutorial sentencing recommendation which was not ultimately made, *at the time respondent pleaded guilty he knew the prosecution would recommend a 21–year consecutive sentence.* Respondent does not challenge the District Court's finding that he pleaded guilty with the advice of competent counsel and with full awareness of the consequences—*he knew that the prosecutor would recommend and that the judge could impose the sentence now under attack. Respondent's plea was thus in no sense the product of governmental deception; it rested on no "unfulfilled promise" and fully satisfied the test for voluntariness and intelligence.*

Thus, because it did not impair the voluntariness or intelligence of his guilty plea, *respondent's inability to enforce the prosecutor's offer is without constitutional significance.*[11]

[11] Indeed, *even if respondent's plea were invalid, Santobello expressly declined to hold that the Constitution compels specific performance of a broken prosecutorial promise as the remedy for such a plea; the Court made it clear that permitting Santobello to replead was within the range of constitutionally appropriate remedies.* See 404 U.S. at 262–263, 30 L.Ed.2d 427, 92 S.Ct. 495 [at 498–99]; *see also id.,* at 268–269, 30 L.Ed.2d 427, 92 S.Ct. 495 [at 502] (Marshall, J., concurring in part and dissenting in part). *It follows that respondent's constitutional rights could not have been violated. Because he pleaded after the prosecution had breached its "promise" to him; he was in no worse position than Santobello would have been had he been permitted to replead.*

467 U.S. at 508–10 & n. 11, 104 S.Ct. at 2547–48 & n. 11, 81 L.Ed.2d at 443–44 & n. 11 (citations and footnotes omitted, emphasis added).

As in *Mabry v. Johnson, supra,* appellant here entered his plea *after* being fully and unequivocally informed of the limits of the plea agreement actually approved by the trial court. Thus, appellant's plea in no way was induced by, or was predicated upon, compliance with the Commonwealth's prior unapproved 1985 plea agreement. Consequently, *Santobello v. New York, supra,* provides no basis for withdrawal of the plea entered and appellant's specific claim regarding the 1985 agreement must be rejected.

■ Our analysis is not concluded. Behind appellant's narrow claim that he should be permitted to withdraw his plea looms a broader assertion that he has suffered an injustice. He struck a deal with a deputy attorney general and performed his obligations under that deal assiduously. Appellant complains, essentially, that when time came to receive the wages of his labors, he was sent away with short pay.

In point of fact, appellant's implicit (but mischaracterized) complaint is not that his *plea* was improperly induced, but that his *extensive cooperation* in the attorney general's investigation was improperly induced. The appropriate question then is not whether appellant's *plea* was invalid

(as appellant argued), but to what extent promises made by the prosecution to obtain a criminal suspect's cooperation may be *specifically enforced* on the basis of substantial performance of, and detrimental reliance upon, a judicially unapproved plea agreement.

The principal case upon this issue is *United States v. Ford,* 99 U.S. 594, 25 L.Ed. 399 (1878), wherein the Supreme Court held that while a prosecutor must be held to terms of cooperation agreements which were within this prosecutor's authority to offer, due process could confer only an equitable right to a pardon when the immunity alleged to have been promised was not within the authority of the prosecutor to confer. *See generally* Annotation, *Enforceability of Agreement by Law Enforcement Officials Not to Prosecute If Accused Would Help in Criminal Investigation or Would Become Witness Against Others,* 32 A.L.R. 4th 990 (1984 & 1988 Supp.); Annotation, *Enforceability of Plea Agreement, Or Plea Entered Pursuant Thereto, With Prosecuting Attorney Involving Immunity From Prosecution for Other Crimes,* 43 A.L.R.3d 281 (1972 & 1988 Supp.); Annotation, *When Is a Federal Prosecutor Bound by Promise of Immunity or Plea Bargains Made by Another Federal Agent,* 55 A.L.R. Fed 402 (1981 & 1988 Supp). The authorities cited in the above annotations indicate varying degrees of adherence to the rule announced in *United States v. Ford, supra,* with *some* jurisdictions indicating a willingness to enforce a prosecutor's *ultra vires* promises in *some limited* circumstances.

Justice Cardozo once opined that, "whether the good to be attained by procuring the testimony of criminals is greater or less than the evil to be wrought by exempting them forever from prosecution for their crimes is a question of high policy." *In the Matter of Doyle,* 257 N.Y. 244, 261, 177 N.E. 489, 495 (1931). So too, it might be added, is the question which arises when criminals are to be given limited concessions, rather than full immunity.

In a better world perhaps, police and prosecutors would not have to engage in such matters of high policy. How-

ever, because not all crimes are committed in the bright light of day before swarms of credible and cooperative citizen witnesses, it is often necessary for police and prosecutors to rely upon, and even bargain with, informants of unsavory character and dubious credibility. *Cf. Commonwealth v. Schaeffer*, 370 Pa.Super. 179, 259, 536 A.2d 354, 394 (1987) (Kelly, J. concurring and dissenting), *allocatur granted* 520 Pa. 596, 552 A.2d 251 (1988).[5] The necessity of such reliance is regrettable, and not without its costs and potential pitfalls. *Cf. Commonwealth ex rel. Saltzburg v. Fulcomer*, 382 Pa.Super. 422, 426, 555 A.2d 912, 913 n. 2 (1989). Ordinarily, however, the wisdom and propriety of relying upon and/or bargaining with criminal suspects for their cooperation is left to the discretion of the police and the prosecution. *Cf. Commonwealth v. Trudell*, 371 Pa.Super. 353, 367, 538 A.2d 53, 60 (1988) (Brosky, J., concurring) (criticizing the prosecution's reliance upon all but convicted perjurers, but conceding the witnesses' competency to testify and the validity of the verdict entered based, in part, on their testimony).

The office of Attorney General, and likewise the office of District Attorney, are highly respected in this Commonwealth, and have been vested with broad powers regarding the enforcement of the criminal law.[6] Within their legitimate scope of authority, they have broad discretion which is subject to judicial review and restraint only upon a plain demonstration of a clear abuse, *i.e.* an arbitrary, vindictive, or discriminatory exercise of prosecutorial discretion. *See generally Commonwealth v. Rocco*, 375 Pa.Super. 330, 544 A.2d 496 (1988); *Commonwealth v. Stinnett*, 356 Pa.Super.

---

**5.** *But see Commonwealth v. Blystone*, 519 Pa. 450, 549 A.2d 81 (1988) (questioning *Schaeffer*); *Commonwealth v. Brion*, 381 Pa.Super. 83, 88, 552 A.2d 1105, 1108 (1989) (finding *Schaeffer* overruled *sub silentio* by *Blystone* ).

**6.** *See* 71 Pa.S.A. §§ 732–201 *et seq.*; 16 P.S. §§ 1401 *et seq.*; 16 P.S. §§ 9951 *et seq.*; *see generally* Steinberg, *From Private Prosecution to Plea Bargaining: Criminal Prosecution, the District Attorney, and American Legal History*, 30 Crime & Delinquency 568 (1984); Lagbein, *The Origins of Public Prosecution at Common Law*, 17 Am.J.L.Hist. 313 (1973).

83, 95, 514 A.2d 154, 160 (1986); *In re Wood,* 333 Pa.Super. 597, 482 A.2d 1033 (1984); *Commonwealth v. Eisemann,* 308 Pa.Super. 16, 453 A.2d 1045 (1982).

Nonetheless, like all authority in our constitutional form of government, the authority of the Attorney General and District Attorneys of this Commonwealth is subject to limitations, checks and balances—some procedural, some legislative, and some constitutional. While prosecutors and police are given broad authority to resolve among themselves the high policy questions involved in balancing the benefits of a criminal's cooperation and/or testimony against the cost of the concessions offered as inducements (as well as the risks inherent in reliance upon such nefarious characters), there are limits to that discretion. Among those limits is the requirement that plea agreements *must* be presented for approval or rejection by the trial court. *See* Pa.R.Crim.P. 319.

It is true that one of the principle reasons for promulgation of Pa.R.Crim.P. 319, was the fact that off-the-record plea agreements were previously the source of considerable controversy and litigation regarding the existence and terms of alleged plea agreements. *See* Pa.R.Crim.P. 319, comment. When, as here, the Commonwealth and the appellant agree as to the terms of the out-of-court agreement, and in fact assert that the terms were reduced to a writing signed by the parties, the aim of Pa.R.Crim.P. 319 to eliminate the potential for conflict as to the terms of the plea agreement may arguably be fulfilled without strict compliance with Pa.R.Crim.P. 319.[7] This, however, is not the rule's sole function.

In this Commonwealth, the legislature has the ultimate authority to prescribe the penalties which a court may

---

**7.** Agreement as to the words of a plea agreement, however, does not necessarily guarantee agreement as to the meaning of those words or the parties understanding of those words. Plea hearings are intended to ensure a meeting of minds as to the *meaning* as well as the *words* of the agreement. In this regard, a written and signed plea agreement may not provide protection equivalent to that provided *via* a plea hearing, even as to the narrow question of the terms of the agreement.

impose upon a defendant following conviction of a criminal offense. *See Commonwealth v. Carr,* 375 Pa.Super. 168, 174–75, 543 A.2d 1232, 1235 (1988) (citing cases). Exercising that authority, the legislature has set sentencing ranges for the various offenses, and provided a framework within which the judiciary has been vested with broad discretion to impose sentence. *See generally* 42 Pa.C.S.A. §§ 9701 *et seq.* The legislature has vested prosecutors, on the other hand, with only narrowly limited authority in sentencing matters. *See e.g.* 42 Pa.C.S.A. §§ 9712(b); 9713(b); 9714(b); 9715(b); *see also Commonwealth v. Pittman,* 515 Pa. 272, 528 A.2d 138 (1987).

To the extent that a proposed plea agreement goes beyond the legitimate discretionary authority vested in the prosecutor, and seeks to bind the sentencing authority vested in the judiciary, court approval of a proposed plea agreement *via* Pa.R.Crim.P. 319 involves a *substantive* exercise of judicial sentencing discretion, as well as an act of *procedural* guardianship. To direct specific performance of a written but judicially unapproved plea agreement in such cases would not only ignore impermissibly the clear mandate of Pa.R.Crim.P. 319 requiring judicial approval, but would also permit prosecutors to effectively exercise sentencing powers which our legislature has not seen fit to vest in them. This we decline to do. *Accord Cunningham v. Novak,* 322 N.W.2d 60, 62 (Iowa 1982) ("If a prosecutor or police officer and defense counsel could by conversation among themselves effect a grant of immunity, the rules requirement of participation by a judge would be rendered meaningless").

There is, however, no reason why this decision should unduly restrict legitimate prosecutorial discretion in negotiating concession/cooperation agreements with criminal suspects. If the bargain struck is limited to concessions which lay within the direct authority of the prosecutor to fulfill, court approval will not be necessary to fulfill the bargain.[8]

8. A prosecutor's sound discretion with respect to charging decisions would presumably include deference to the prosecutor's authority to

If court approval is required either to ensure the enforceability of the agreement, or because the prosecutor seeks to offer concessions which lay outside the ability of the prosecutor to fulfill (*e.g.* sentencing concessions), then the prosecutor may seek an expedited plea hearing and a sealed record to ensure the safety of the cooperating criminal and the investigating officers while the investigation involved continues. *Cf. Commonwealth v. Fenstermaker*, 515 Pa. 501, 513, 530 A.2d 414, 420 (1987) (factors supporting the sealing of court records include protecting the safety of informants and preserving the integrity of ongoing criminal investigations).

We concede that appellant has been denied the full wages he was promised by the deputy attorney general for his extraordinary services as a wired informant in the Attorney General's investigation. Nonetheless, the deputy attorney general had no authority to bargain away the trial court's sentencing authority.[9]

## *Conclusion*

Judgment of sentence affirmed.

JOHNSON, J., concurs in the result.

balance the relative value of the criminal informant's cooperation in deciding whether to offer charging concessions like those in the instant case. *Cf. In re Wood, supra; Commonwealth v. Eisemann, supra.*

9. That appellant was unaware of this defect in the deputy attorney general's authority and was without counsel to advise him at the time is unfortunate, but does not in our view compel approval and enforcement of the unapproved plea agreement. We hasten to add that there is every indication in the record that the Commonwealth acted throughout in the sincere, but mistaken, belief that the original bargain struck with appellant could and would be completely fulfilled. Finally, we note that the principle benefit for which appellant bargained, *i.e.* a substantial reduction in charges brought against him, was in fact received. Moreover, in light of appellant's serious criminal conduct, the sentence imposed was still lenient, though not as lenient as had been expected. Hopefully, this opinion will prevent the occurrence of such misunderstandings in the future.