**Commonwealth v. Smith**

*Larry Sachs,* for the Commonwealth.
*David DeFazio,* for the defendant.

MANNING, *J.,* March 31, 1995—The defendant, Brett Lamar Smith, was charged with two violations of the Controlled Substance, Drug, Device and Cosmetic Act along with one count of criminal conspiracy with his brother, Anthony Smith, and one count of violating the Uniform Firearms Act. Defendant initially entered into a plea agreement with the Commonwealth in which he entered a general plea to the charges in the information in exchange for the Commonwealth's agreement not to seek the imposition of a mandatory minimum drug sentence pursuant to 18 Pa.C.S. §7508. The Commonwealth has claimed it entered into this agreement because of "evidentiary concerns with the case," particularly, evidence problems relating to the constructive possession of controlled substances. Consistent with that agreement the defendant entered a guilty plea before the Honorable Donna Jo McDaniel on May 3, 1993. A presentence report was ordered and sentencing was scheduled for July 7, 1993.

Prior to sentencing, defendant retained new counsel and filed a petition to withdraw guilty plea. A hearing was held on the petition on June 15, 1993 after which the defendant, Brett Lamar Smith, was permitted to withdraw his guilty plea. Judge McDaniel recused herself from further proceedings. The case was reassigned to this court and proceeded to trial by jury on October 4, 1993. The jury adjudged the defendant guilty of all counts. On October 4, 1993, immediately following the guilty verdict, the assistant district attorney who prosecuted the case announced that the Commonwealth

intended to seek the mandatory minimum sentence of not less than one year imprisonment and a fine of not less than $5,000. 18 Pa.C.S. §7508(a)(3)(i). Post-verdict motions were filed and a hearing was scheduled for November 16, 1993.

At that hearing, trial counsel moved to withdraw and David DeFazio, Esquire entered his appearance. Amended post-verdict motions were filed by defendant on November 30, 1993.

At a hearing on February 1, 1994, various members of the district attorney's office testified that their policy concerning the discretionary application of the mandatory provisions of 18 Pa.C.S. §7508 was to seek the imposition of the mandatory sentence *unless* one or both of the following situations arose:

(1) the prosecution felt that there were serious deficiencies in its case such that a conviction was rendered improbable; or,

(2) the office of the district attorney obtained cooperation of the defendant leading to convictions of parties other than the defendant.

The representatives of the district attorney's office also testified that the decision regarding the mandatory sentence was ordinarily a pre-trial decision, and rarely made after trial.

After thorough consideration of the presentence report and a careful evaluation of the factors and policies bearing on its sentencing discretion, this court refused to impose the mandatory minimum sentence as requested by the prosecution. Rather, the court, finding this to be the defendant's first involvement in the criminal justice system, sentenced the defendant to not less than nine nor more than 23 months in the Allegheny County Jail, with alternative housing and work release

permitted.[1] The court further ruled that the district attorney's office unconstitutionally infringed defendant's right to due process by vindictively seeking imposition of the mandatory minimum sentence to punish defendant's exercise of his right to a trial.

The Commonwealth appeals and lists in its concise statement of matters pursuant to Pa.R.A.P. 1925(b) the following three issues:

(1) Whether the sentence imposed was illegal, in that the sentencing court failed to impose the mandatory minimum term of imprisonment applicable under 18 Pa.C.S. §7508 as to which proper notice had been given by the Commonwealth?

(2) Whether this illegal sentence was the result of the court's erroneous conclusion that the Commonwealth could not seek the mandatory sentence after defendant's conviction at trial, because it had previously offered to waive the mandatory sentence during unsuccessful plea negotiations?

(3) Whether the sentencing court abused its discretion by imposing a sentence at the low end of the mitigated range of the sentencing guidelines?

These issues will be discussed seriatim.

This court refused to apply the mandatory minimum sentence called for by the statute because the district attorney's office unconstitutionally infringed upon defendant's right to due process by vindictively seeking imposition of the mandatory minimum sentence to punish defendant's exercise of his right to a jury trial. In so concluding, this court remains steadfast in its opinion

1. The applicable sentencing guidelines, with an offense gravity score of "E" and a prior record score of "0," called for a mitigated range of 9-15 months, a standard range of 15-27 months and an aggravated range of 27-33 months.

that the prosecutor does not possess *sole* discretion to seek imposition of the mandatory sentencing provisions. Insofar as such discretion is deemed to be in the hands of the prosecutor, it is this court's duty to ensure that such discretion is not abused and that the mandatory sentencing statute is applicable.

In this case, the district attorney not only has abused his discretion, but has bastardized the intent and purpose of mandatory sentencing.

Mandatory sentences were designed to eliminate judicial discretion by imposing harsh sentences for specific types of crimes and to uniformly punish certain criminal activity — not as a plea bargaining tool to coerce a defendant to give up his or her right to a suppression hearing or trial and enter a plea of guilty.

The Mandatory Minimum Sentencing Act, 42 Pa.C.S. §7508, provides, in pertinent part:

"(a) *General Rule*—Notwithstanding any other provision of this or any other act to the contrary, the following provisions shall apply: ...

"(3) A person who is convicted of violating section 13(a)(14) or (3) of the Controlled Substance, Drug, Device and Cosmetic Act where the controlled substance is ... [cocaine] ... *shall,* upon conviction, be sentenced to a mandatory minimum term of imprisonment and a fine set forth in this subsection:

"(i) when the aggregate weight of the compound or mixture containing the substance involved is at least two grams and less than 10 grams; one year in prison and a fine of $5,000 or such larger amount as is sufficient to exhaust the assets utilized in and the proceeds from the illegal activity ...

"(b) *Proof at sentencing*—Provisions of this section shall not be an element of the crime. Notice of the

applicability of this section to the defendant shall not be required prior to conviction, *but reasonable notice of the Commonwealth's intention to proceed under this section shall be provided after conviction and before sentencing. The applicability of this section shall be determined at sentencing. The court shall consider evidence* presented at trial, shall afford the Commonwealth and the defendant an opportunity to present necessary additional evidence *and shall determine, by a preponderance of the evidence, if this section is applicable.* (emphasis added)

"(c) *Mandatory sentencing*—There shall be no authority in any court to impose on an offender to which this section is applicable a lesser sentence than provided for herein or to place an offender on probation, parole, work release or prerelease or to suspend sentence."

### I.

Although Pennsylvania courts have repeatedly interpreted the phrase "reasonable notice of the Commonwealth's intention to proceed ... ." as a legislative grant of discretion to the prosecutor to determine whether to invoke a mandatory sentence, this court maintains that these interpretations are fundamentally flawed.

In *Commonwealth v. Pittman,* 515 Pa. 272, 528 A.2d 138 (1987), the Supreme Court of Pennsylvania was faced with the question of whether the mandatory minimum sentencing provision of 42 Pa.C.S. §9712 was applicable every time an enumerated felony was committed with a firearm or *only* when the Commonwealth gave notice of its intention to seek the mandatory sentence. In *Pittman,* the defendant pled guilty to armed robbery. The Commonwealth, pursuant to a plea agreement, did not request imposition of the mandatory mini-

mum sentence. Though it was obvious that a mandatory sentence was applicable to the facts of the case, the sentencing court sentenced the defendant to a term of imprisonment of two to four years. Subsequently, the court, sua sponte, vacated the original sentence and imposed the mandatory sentencing provisions of 42 Pa.C.S. §9712(a). The sentencing court stated that the sentencing provisions of 42 Pa.C.S. §9712 were applicable "regardless of whether the Commonwealth requests that the mandatory minimum sentencing provision be invoked ... ." *Commonwealth v. Pittman, supra* at 276, 528 A.2d at 140-41.

In determining that the mandatory sentence was triggered solely by the Commonwealth, the Supreme Court interpreted subsection (b) of the statute as granting discretion to the Commonwealth. It states *"reasonable notice of the Commonwealth's intention to proceed under this section shall be provided after conviction and before sentencing."* While such an interpretation is consistent within the confines of a single isolated sentence of subsection (b), this court is of the opinion that the majority opinion failed to consider the directive contained in the remainder of subsection (b), in summarily determining that the prosecutor's discretion was "apparent." Furthermore, the reasoning employed by the majority ignores plain language of the Act to the contrary.

Subsection (b), "Proof at sentencing," of 42 Pa.C.S. §9712, which is virtually verbatim to subsection (b) of section 7508, states:

"(b) *Proof at sentencing* —Provisions of this section shall not be an element of the crime and notice thereof to the defendant shall not be required prior to conviction, *but reasonable notice of the Commonwealth's intention to proceed under this section shall be provided after*

*conviction and before sentencing. The applicability of this section shall be determined at sentencing. The court shall consider any evidence* presented at trial and shall afford the Commonwealth and the defendant an opportunity to present any necessary additional evidence *and shall determine, by a preponderance of the evidence, if this section is applicable.*" (emphasis added)

In determining that the prosecutor has sole discretion to invoke the terms of section 9712, the Supreme Court reasoned that the statute would not have referred to the Commonwealth's "intention to proceed" if the Commonwealth had no option but to request the imposition of a mandatory sentence in every case where a firearm was used. If the same reasoning is applied to the remainder of subsection (b), then the statute would not have referred to "the court's determin[ation that the] section is applicable" if the court was truly rendered powerless to determine the section's applicability at sentencing. Apparently, the Supreme Court would ask this court to blindly accept its reasoning with respect to the prosecutor's alleged discretion, while ignoring a clear directive to assess, by a preponderance of the evidence, that the section is even applicable to a specific set of facts.

Reading section 9712 "to give effect to all [of] its provisions," 1 Pa.C.S. §1921(a), the second and third sentences of subsection (b) should be considered in conjunction with the first sentence requiring notice "of the Commonwealth's intention to proceed ... ." The second and third sentences of subsection (b) unequivocally pronounce that the sentencing court has exclusive authority to determine the applicability of section 9712. Specifically, the second sentence of subsection (b) states that the applicability of section 9712 *"shall be determined by the court at sentencing"* after considering

the evidence presented at trial as well as necessary additional evidence offered by either party. Subsection (b) was devised, therefore, simply to provide the defendant notice of his sentencing and to provide an opportunity to present evidence. Subsection (b) does not, as the Commonwealth and the *Pittman* court suggests, impart to the prosecutor the power to control the sentencing proceeding.

Likewise, subsection (c), "Authority of the court," states *"there shall be no authority in any court to impose on an offender to which this section is applicable any lesser sentence ... ."* Reading this section in light of subsection (b) vesting the sentencing court with sole authority to decide whether to employ section 9712, it is clear that the legislature did not intend to give the prosecutor any discretion to determine whether or not to proceed under this section. In fact, to read these sections in any other way would render the provisions virtually meaningless.[2]

Approximately four years later, the Superior Court was called upon to determine whether the Commonwealth has the sole discretion to invoke the mandatory sentencing provisions set forth in 18 Pa.C.S. §7508, enacted with fundamentally identical language to 42 Pa.C.S. §9712 in the case of *Commonwealth v. Biddle,* 411 Pa. Super. 210, 601 A.2d 313 (1991).

In *Biddle,* the lower court rejected a plea agreement and sentenced defendant pursuant to the mandatory sen-

---

2. "It is highly irregular to interpret the Act as, on the one hand, removing from the sentencing court a large measure of the discretion traditionally reserved for the courts at sentencing, and on the other hand, to repose in the prosecutor sole discretion over whether to impose mandatory sentencing, a discretion not within the traditional authority of the prosecutor." *Pittman, supra* at 287, 528 A.2d at 146, dissenting opinion.

tencing requirements of 18 Pa.C.S. §7508. Under the terms of the agreement, defendant agreed to enter a general plea of guilty to seven drug-related counts (possession, possession with intent to deliver and delivery of 223.1 grams of cocaine) and to provide future cooperation with state and federal authorities in exchange for the Commonwealth's agreement not to invoke the mandatory sentencing provisions of 18 Pa.C.S. §7508. The sentencing court, having determined that the mandatory sentencing provisions were applicable by a preponderance of the evidence, sentenced the defendant to the mandatory minimum three year term of imprisonment. In so doing, the court rejected the dictum and holding of *Pittman,* stating that the legislative history and intent surrounding the adoption of mandatory drug trafficking sentences of 18 Pa.C.S. §7508 failed to support the Commonwealth's contention that sentencing discretion was to be removed from the hands of the judiciary and placed into the hands of the prosecutor. Rather, the court, through pertinent rules of statutory construction, determined that the clear import of the statutory language of 18 Pa.C.S. §7508 dictates that mandatory penalties are to be imposed in all applicable cases.

The Superior Court, although "constrained" in doing so, ruled that it was "bound by" the Supreme Court's interpretation of similar language in *Pittman. Biddle, supra* at 218, 601 A.2d at 318.

Despite the Supreme Court's decision in *Pittman* and the Superior Court's later interpretation of *Pittman* in *Biddle,* it is this court's continuing judgment that the legislature never intended to transfer discretion from judges to prosecutors in matters of sentencing. As this court stated in *Biddle,*

"there is no evidence whatsoever to support the contention that the legislature intended to remove the sen-

tencing discretion which was alleged to be abused from the hands of the judiciary and place that discretion in the hands of the prosecutor. Not one word of the statute nor its history in committee can be found to support a transfer of discretion. The adoption of language parroting 42 Pa.C.S. §9712 in the notice provisions (18 Pa.C.S. §7508(b) from 42 Pa.C.S. §9712(b)), can no more be considered a *sub silentio* adoption of the holding in *Pittman* than a simple example of legislative ignorance or lethargic draftsmanship. There is no acknowledgment of the *Pittman* decision in any of the parliamentary ramblings and not one whisper from any elected representative that prosecutors instead of judges should decide what sentences are to be served. ...

"There is not even a hint, in the statutory language, in the words of the members of the General Assembly who enacted the statute, or in any common sense analysis of the 'mischief to be remedied or the object to be attained' that the legislature ever intended to uproot judicial discretion to impose a lesser sentence and transplant that weed in the garden of prosecutorial discretion. To so interpret this statute grants to the prosecutor, a new unfettered right to decide what the sentence ought to be and the authority to make that decision in the secret recesses of his or her private office rather than by a fair and impartial jurist in the bright light of a public courtroom, as has been the Anglo American tradition of law and justice. ...

"To construe this section as granting unbridled power to the prosecutor to decide who is subject to Draconian punishment and who is not, would, in the words of Justice Scalia, deprive 'legislators of the assurance that ordinary terms, used in an ordinary context, will be given a predictable meaning.' " *Commonwealth v. Biddle,* slip opinion, Allegheny County Court of Common Pleas, CC 8900747 at 9-11.

II.

To the extent that the holdings of *Pittman* and *Biddle* are read to grant unfettered discretion to the prosecutor to invoke the terms of mandatory sentencing provisions, it is this court's considered conclusion that the district attorney has abused this discretion: (1) by exceeding the proper limits of the discretionary role conferred to the prosecutor in sentencing; (2) by arbitrarily and discriminatorily applying its interoffice policies regarding the discretionary application of the mandatories; and (3) by circumventing the court's supervisory function under Pa.R.Crim.P. 319.

In the Supreme Court's opinion in *Pittman,* the court engaged in discussion regarding the constitutionality of granting discretionary authority to the prosecutor to invoke the terms of 42 Pa.C.S. §9712. The court concluded that such discretionary authority is constitutionally permissible "because it falls within the traditional powers which are accorded prosecuting attorneys." *Pittman, supra* at 278, 528 A.2d at 142. Although not specifically defined, the court alluded to "traditional powers" as those being related to the charging function and/or the sentencing function. The court did not provide for a "hybrid" of the two. See *Pittman, supra* at 280, 528 A.2d at 142-43, citing *Commonwealth v. Bell,* 512 Pa. 334, 347-48, 516 A.2d 1172, 1179 (1986) (prosecutor has discretion to determine whether to *employ* section 9712); *Commonwealth v. Parker White Metal Co.,* 512 Pa. 74, 515 A.2d 1358 (1986) (prosecutor has authority to choose between procedures and sentencing alternatives); *Commonwealth v. Zettlemoyer,* 500 Pa. 16, 454 A.2d 937 (1982) (prosecutor has discretion as to whether to charge first degree murder and whether to seek death penalty); *Commonwealth v. Lutz,* 508 Pa. 297, 495 A.2d

928 (1985) (prosecutor has discretion to decide whether or not to recommend a defendant charged with DUI for the ARD program); *United States v. Batchelder,* 422 U.S. 114, 99 S.Ct. 2198, 60 L.Ed.2d 755 (1979) (prosecutor has discretion to decide whether to charge one of two statutes with identical elements even where statutes provide for different penalties).

It is clear that the Supreme Court did not intend to expand the "traditional powers" accorded to prosecuting attorneys from the power to bring a criminal charge or not to bring a criminal charge incorporating varying degrees of potential punishment, to include the power to coerce guilty pleas by manipulating mandatory penalties. Nor did the Supreme Court redefine sentencing authority by shifting the discretion to proceed or not to proceed with mandatory sentences to an area to which it was never intended to apply—the plea bargaining process.

The prosecutor always has the traditional power and discretionary authority to charge or not to charge. Certainly, the prosecutor's discretion under the mandatory sentencing scheme is closely bound up with the traditional charging discretion, a discretion which has its own logic and purpose. Intertwined with this function, prosecutors have limited power to determine a sentence within a narrow range by their charging decisions and plea bargains. The prosecutor is not, however, expressly entrusted with any discretion at all over sentencing, other than to state or not to state its "intention to proceed." During the sentencing hearing held before this court on February 1, 1994, several members of the district attorney's office were questioned regarding their understanding of the discretion afforded prosecuting attorneys with respect to 18 Pa.C.S. §7508. Assistant District Attorney Daniel Konieczka, when asked his

interpretation of 18 Pa.C.S. §7508 stated: "I believe it's within the district attorney's office's discretion [to invoke it or not] ... We have certain guidelines. We normally only waive the mandatory if there's been co-operation on the defendant's part or if there are evidentiary problems in the case, either the case in chief or in a suppression matter." (N.T. 2/1/94 at 7.) Konieczka further testified that he interpreted the statute (7508) as granting discretion both pre-trial and post-trial. (N.T. 2/1/94 at 13-14.)

Richard Goldberg, the head of the narcotics unit of the Allegheny County District Attorney's Office testified that in all cases where there is an offer to waive the mandatory sentence pre-trial, it is the policy of the district attorney's office to withdraw the offer "once the defendant says [he's] going to trial." (N.T. 2/1/94 at 32.) In this regard, Mr. Goldberg further testified as follows:

"Q: What's the reason for the district attorney's policy in only waiving the mandatory pre-trial for these either evidentiary or cooperative reasons?

"A: It's in the nature of any plea bargain. You know, at that point we're not sure that there's going to be a conviction. So, you know, when we take into account these evidentiary problems or cooperation, then it's our reason to do it.

"You know, I don't believe that we have to do it. I don't believe that we have to have a policy. I don't think that the statute indicates that there has to be some sort of policy, but we do it in an attempt to be as fair as you can be in dealing with sentencing when there's a mandatory which was given to, you know, all of us by the legislature ... . So it's a policy that we use to attempt to be fair, to implement the mandatory sentencing statute the best that we can as human beings.

"The Court: But if you go to trial, you're stuck with it?

"Witness: But if we go to trial, we're stuck with it. That's exactly right ... . We have to deal with it every day; and if we have these evidentiary problems, we have people that cooperate, that's important to the police community, for law enforcement, that they get cooperation from people.

"So that's something that comes in, that we formulated that into a policy, loose-knit it may be, and it's a policy that may not be, you know—you know, you can't have every situation the person with the same crime ...

"... So we use it in an attempt—we have a policy to try to be fair, which is going to bring into account the requirements or the needs of the law enforcement community, our needs as prosecutors and whether or not we may lose the case on evidentiary problems even though we believe the person is guilty I may add. There are plenty of people that are guilty that are acquitted ... .

"... It's in the nature of plea bargaining. So the point is that we do a pretrial, and once it goes to trial, you know, that's it. I mean if the person wins, they're certainly not going—if the person is acquitted, they're not going to ask that they get a lighter sentence, you know. They've been acquitted. So that's the adversary nature of it ... .

"Q: So it's these pretrial exceptions to the mandatory that are—well, they're in the nature of exceptions? The general practice then is to seek the mandatory always?

"Witness: The answer is yes. If it goes to trial and if there's a conviction, we ask for the mandatory." (N.T. 2/1/94 at 32-36.)

Finally, during argument to the court, Assistant District Attorney Larry Sachs indicated that the district attorney's office was granted discretion from the legislature to "use these mandatories or to waive these mandatories." (N.T. 2/1/94 at 40.)

It is this court's opinion that the district attorney's office has, without proper authority, increased and redefined its discretionary role with respect to sentencing under 18 Pa.C.S. §7508(b) (reasonable notice of the Commonwealth's intention to proceed under this section shall be provided *after conviction and before sentencing*). With this preempted power, the prosecutor can consistently abuse the discretion granted him by the dictates of *Pittman* by usurping a sentencing tool to coerce defendants to plead guilty and/or to punish defendants who wish to exercise their constitutional right to a suppression hearing and/or a trial.

The object of the mandatory drug sentences was to remove judicial discretion. The legislature in enacting such provisions sought to deter criminal drug activity through increased, harsher penalties, not to provide a new bargaining tool for prosecutors. To manipulate the mandatory sentencing statute by offering to waive the mandatory minimum sentence pre-trial, the district attorney has redefined the proper limits and use of the discretion afforded him and has shifted that discretion to an area to which it was not intended to apply. There is not one word in the mandatory drug sentencing statute which grants such discretion. There is likewise no discretion granted in the Supreme Court's interpretation of the statute in *Pittman.*

The statute and the legislative history clearly indicate that certain mandatory sentences were to be imposed, and that the Commonwealth's limited role should be to provide notice, to give the defendant an opportunity

to defend and to assure that the court makes a finding that the statute is applicable. There is no authority upon which the Commonwealth can legitimately justify the use of its sentencing role in the pre-trial phase of a case.

It is further the opinion of this court that, to the extent that the district attorney's office is permitted to and has implemented certain discretionary policies regarding the application of the mandatory provisions of 18 Pa.C.S. §7508, these policies are applied arbitrarily and discriminatorily and constitute nothing more than coercion of the accused.

In this case, Assistant District Attorney Daniel Konieczka testified that he offered to waive the mandatory sentence in exchange for defendant's general plea because of "evidentiary problems" causing his case to be "... far from a sure winner." (Sentencing transcript, 2/1/94 at 27.) Although acknowledging these evidentiary concerns, Konieczka also noted that *once convicted,* "there was no reason not to seek the mandatory because there was no evidentiary problems at that point and time." (Sentencing transcript, 2/1/94 at 10.) *"The only reason* why we do not seek the mandatory is if there's evidentiary problems or cooperation. There was no cooperation in this case; and obviously since the jury convicted [defendant] after a trial, there were no evidentiary problems." (Sentencing transcript, 2/1/94 at 10-11.) As clarified by Richard Goldberg, these considerations (cooperation or evidentiary problems) only occur pre-trial; once a defendant says "I'm going to trial," however, it is the district attorney's policy to take the waiver of the mandatory sentence "off the table." (Sentencing transcript, 3/1/94 at 32.)

As the court interprets this testimony, it is *not* the policy of the district attorney's office to waive the man-

datory sentence every time a case involves evidentiary concerns or a cooperative defendant. Rather, the district attorney will waive the mandatory sentence if, and only if, a defendant "cooperates" or a defendant who might win a suppression hearing or a trial gives up his constitutional rights and pleads guilty—but *not* if he seeks to exercise those constitutional rights.

If Brett Smith had cooperated fully and truthfully and had provided credible evidence against others, but prior to trial had decided to "roll the dice" rather than plead guilty, could we expect the Commonwealth to ignore the defendant's cooperation and seek the mandatory sentence? Following the district attorney's stated "office policies" the answer must be "yes," clearly punishing the exercise of constitutional rights.

Despite the district attorney's admission that multiple "evidentiary problems" existed in this case, once the defendant chose to go to trial and suffered a conviction rather than simply pleading guilty, the prosecution conveniently ignored its own guidelines which direct that the mandatory sentence be waived. Thus, in every case where a suppression motion is denied and a defendant is convicted, regardless of the district attorney's pre-trial determination that evidentiary deficiencies rendered a conviction improbable or even questionable, the bright light of success blinds the prosecutor's vision of the seemingly insurmountable obstacles that were once present in his case.

It is therefore inescapable that *every* time the district attorney succeeds with weak evidence, he or she is free to, and does, ignore that the case was once fraught with deficiencies, which admittedly required a plea negotiation waiving a mandatory sentence. Claiming "evidentiary considerations" or "problems," in these instances, is simply a ruse for coercion. "Evidentiary

considerations" or "problems" are true obstacles to a successful prosecution when, and only when, a defendant pleads guilty. When a defendant chooses to exercise his constitutional right to a suppression hearing or trial and the district attorney succeeds, these "problems" magically vanish—vaporized by the successful decision or verdict. Thus, the defendant is punished for exercising his constitutional rights of suppression and trial since waiver of the mandatory penalty is *never* available to one who elects this course.

Finally, it is this court's opinion that the district attorney's practice of bartering with the mandatory sentences pre-trial in reaching plea agreements, permits circumvention of the court's supervisory function under Pa.R.Crim.P. 319. Rule 319 states, in pertinent part:

*"(b) Plea Agreements.*

"(1) The trial judge shall not participate in the plea negotiations preceding an agreement.

"(2) When counsel for both sides have arrived at a plea agreement they shall state on the record in open court, in the presence of the defendant, the terms of the agreement. Thereupon the judge shall conduct an inquiry of the defendant on the record to determine whether he understands or concurs in the agreement.

"(3) If the judge is satisfied that the plea is understandingly and voluntarily tendered, he may accept the plea. If thereafter the judge decides not to concur in the plea agreement, he shall permit the defendant to withdraw his plea."

The comments to Pa.R.Crim.P. 319 make it clear that paragraph (b) is intended to assure that "all terms of the quid quo pro are openly acknowledged *for the court's assessment."* Thus, the full terms of the agreement must be stated in open court so that a full inquiry

may be made on the record to determine whether the plea is voluntarily and understandingly tendered. The integrity of the judicial process demands that such safeguards be stringently adhered to so that the resultant plea as entered by the defendant is made voluntarily and knowingly. *Commonwealth v. Zuber,* 466 Pa. 453, 353 A.2d 441 (1976). As our Superior Court has so aptly pointed out, court approval of a plea agreement is far more than a ministerial act. It constitutes "a substantive exercise of judicial sentencing discretion, as well as an act of procedural guardianship." *Commonwealth v. Porreca,* 389 Pa. Super. 553, 568, 567 A.2d 1044, 1051 (1989).

Since the *Biddle/Pittman* courts have rendered the trial court powerless in determining the applicability of mandatory minimum sentences, by using the threat of these sentences to induce plea agreements, the district attorney has successfully bypassed the court's prerogative to determine if the agreements serve the best interest of justice. In so doing, the prosecution has perverted the plea bargaining system, preventing the court's review of whether a defendant was coerced into a bargain or fraudulently induced to give up the very valued constitutional guarantees including the right to a suppression hearing and/or a trial.

There is an affirmative duty on the part of the court to insure that the terms of the plea agreement are openly acknowledged and evaluated. However, where the agreement is predicated upon the exercise of the district attorney's discretion in giving "notice of intention to proceed" under the mandatory provisions, the court's ability to exercise its supervisory function pursuant to Rule 319 by accepting or rejecting the plea agreement is emasculated. Since the court cannot sua sponte impose a mandatory penalty, the court lacks authority to reject

a plea agreement predicated upon the district attorney's waiver of the mandatory sentence. Certainly, this practice is violative of the entire plea bargaining process and cannot be tolerated.

### III.

It is well-established that sentencing is a matter vested within the sound discretion of the sentencing judge. *Commonwealth v. Cornish,* 403 Pa. Super. 492, 589 A.2d 718 (1991). In this regard, the court must exercise its discretion in accordance with applicable provisions of the Sentencing Code, 42 Pa.C.S. §9701 et seq. Thus, the sentence imposed must be within statutory limits and the record must show that the court considered the sentencing guidelines and imposed sentence consistent with the gravity of the offense, the rehabilitative needs of the defendant and the protection of the public. 42 Pa.C.S. §9721(b).

In this case, the Commonwealth maintains that the sentencing court abused its discretion by imposing a sentence at the low end of the mitigated range of the sentencing guidelines. This question challenges the discretionary aspects of the sentence rather than its legality.

There was no abuse of discretion in this case. Under the sentencing guidelines, the offense gravity score for defendant's conviction is an "E" and his prior record score is "0." These scores result in the following suggested minimum sentencing ranges: standard range 15-27 months; aggravated range 27-33 months; and mitigated range 9-15 months. Thus, the sentence imposed is in the mitigated range suggested by the guidelines.

In addition, the court took into consideration, by way of the presentence report, character and background information concerning the defendant upon which a sentence may be based (information that the district

attorney's office ignores in their determination to invoke mandatory sentences). *Commonwealth v. Mobley,* 399 Pa. Super. 108, 115-16, 581 A.2d 949, 952 (1990). Based upon this information, the sentencing court set forth detailed reasons for the imposition of sentence and carefully considered the circumstances of defendant's case. Specifically, the court noted the defendant's age, education, lack of prior record and prospects for rehabilitation. See sentencing transcript; guideline sentence form.

For the reasons set forth above, the Commonwealth's motions are accordingly denied.